504 So.2d 1285 (1986)
Steven K. SMITH, Individually and As General Partner of Smith and Smith, Appellant,
v.
DEPARTMENT OF BUSINESS REGULATION, DIVISION OF LAND SALES, CONDOMINIUMS AND MOBILE HOMES, Appellee.
No. BL-49.
District Court of Appeal of Florida, First District.
December 31, 1986.
On Motions for Clarification and Rehearing March 19, 1987.
*1286 Robert E. Austin and Jerri A. Blair, of Robert E. Austin, Jr., P.A., Leesburg, for appellant.
Thomas A. Bell, Gen. Counsel and Thornton J. Williams, Staff Atty., Dept. of Business Regulation, Tallahassee, for appellee.
JOANOS, Judge.
Steven K. Smith appeals from a final order of the Department of Business Regulation, Division of Florida Land Sales, Condominiums and Mobile Homes which orders him to pay a civil penalty and to assume obligations to time share purchasers. We affirm.
In May 1981 The International Time-Share Consultants, Inc. (ITSC) and The Sands Beach Club (Sands) entered into an Agreement for a deed under which ITSC agreed to purchase Daytona Sands Motel from Sands and convert it to a vacation time share development. The purchase price was to be paid through periodic payments and the assignment of deferred payment obligations of purchasers of the time-share units. The record reveals that the project was under-capitalized from the beginning.
In June 1981 ITSC assigned its interest in the agreement to Daytona Sands Beach Club, Inc., (Beach Club), who took over as *1287 developer. Beach Club is a corporation which was organized specifically to fund the time share project. ITSC entered into a separate Agreement with Beach Club to market the units.
During summer and fall of 1981, ITSC, on behalf of Beach Club, sold time-share units to third-parties. Sales did not meet expectations. Beach Club arranged for Steven Smith, appellant, to provide financing to Beach Club. Seven thousand dollars in cash was to be advanced for each fifty thousand dollars of third-party purchase money notes held by Beach Club and transferred to Smith. Also the collateral included the paper on 28 unit weeks which had already been sold. The Agreement executed on December 4, 1981 was dated back to August 14, 1981 when these contracts were created. The Agreement signed was one Smith had drafted and used on previous occasions involving time-share transactions.
In addition to the paper on 28 unit weeks, Smith was assigned six unsold units as collateral for the remaining balance of his loan, which were to be traded for notes as they became available under the financing Agreement. The Assignment contract was drafted by appellant's attorney in February 1982.
Within 60 days of Smith's involvement with the time-share plan, it ceased to operate. The project closed down February, 1982 and some of the time-share purchasers did not get their accommodations. The Division brought action against ITSC, Beach Club and Sands, and this action against appellant. The Division accused appellant of failure to comply with section 721.17, Florida Statutes (1981).
The administrative hearing officer found that Smith had received an Assignment of interest from Beach Club in 34 of 40 units and had not agreed in writing pursuant to section 721.17, Florida Statutes (1981) to honor the rights of time-share purchasers or to assume the obligations of the seller to the time-share purchasers. The final order reflects that section 721.26(5)(b), Florida Statutes (1981) authorized the imposition upon Smith of the obligations that would have been incurred by the execution of the Agreement as required under section 721.17, Florida Statutes (1981). The Division ordered Smith to: 1) pay a civil penalty of $5,000, 2) honor the rights of purchasers to cancel their contract and receive appropriate refunds, and 3) assume Beach Club's obligation to the time-share purchasers.
Appellant's actions were governed by Chapter 721, entitled Real Estate Time-Sharing Plans. All of appellant's challenges pertain to the hearing officer's application of section 721.17 Florida Statutes (1981), "Transfer of sellers interest to third party", which provides in pertinent part:
No seller shall sell, lease, assign, mortgage, or otherwise transfer the seller's interest in the accommodations or facilities of a time-sharing plan to a third party unless:

(1) The third party agrees in writing to honor fully the rights of purchasers of the time-sharing plan to occupy and use the accommodations or facilities.

(2) The third party agrees in writing to honor fully the rights of purchasers of the time-sharing plan to cancel their contracts and receive appropriate refunds, as provided in this chapter.
(3) The third party agrees in writing to comply with the provisions of this chapter for as long as the third party continues to sell the time-sharing plan or for as long as purchasers of the time-sharing plan are entitled to occupy the accommodations or use the facilities, whichever is longer in time.
(4) The third party agrees to assume all obligations of the seller to purchasers.

(5) Notice is mailed to each purchaser of the time-sharing plan affected thereby within 30 days of the sale, lease, assignment, or other transfer. (Emphasis supplied).
Smith's liability is solely a question of the application of Chapter 721, "Real Estate Time-Sharing Plans" to his involvement in this case. Smith insists that his role in facilitating this time share plan is totally distinct from that of a "seller" as found in section 721.17, Florida Statutes (1981). However, in asserting that section *1288 721.17 (1981) is not applicable to him he ignores the language and intent of Chapter 721 as a whole.
The hearing officer correctly highlighted all of the appropriate sections of Chapter 721, which when read together, emphasize that Chapter 721 was designed to establish procedures to regulate the entire operation of time-sharing plans. A large section of the chapter is devoted solely to the regulation of time-share operations by the Division for protection of the public, and the deterrence and punishment of those, like appellant, who seek to involve themselves in the time-share operation without fulfilling this chapter's statutory requirements designed for the purchaser's protection.
Appellant fails to note that in Chapter 721 the definition of "seller" includes "any other person who is offering time-share periods for sale to the public in the ordinary course of business, except a person who has acquired a time-share period for his own occupancy ..." Smith does not fall within the latter category.
Also appellant regards himself as a financier, to distinguish himself from parties covered by the statute in question. However, appellant ignores the language found in section 721.05(9) "offer for sale" which includes as part of the definition "... any other method whereby a purchaser is offered an opportunity to participate in a time-sharing plan." The record revealed that appellant was gaining a financial benefit from his involvement in this time-share transaction, and had sent payment books to purchasers to facilitate the process of their payment, which in turn enhanced appellant's financial gain.
Appellant also argues that he cannot incur liability under Chapter 721 because he did not receive an interest in real property so his involvement was innocent by Chapter 721 standards. We disagree. The record reveals that appellant was a professed businessman familiar with time-share operations. Appellant admittedly drafted the Agreement upon which he relied, and had used the same contract in his previous time-share transactions.
Also appellant signed an Addendum to the Agreement contract, which stated that he understood the contract to involve the "right to use" time-share units rather than ownership of fee simple titles. The Addendum was the only documentation of modification to the Agreement. No other language in the document was altered. A review of the Agreement's language reveals that appellant obviously intended to participate in the sale and marketing of time-share units. Appellant also participated in filling in the blanks regarding, among other things, the retail value of the units, principle and interest collections and percent down payment. The record reveals that when he filled in the blanks in December appellant knew he was involved in a "right to use" project. Ironically, on page 7 of the Agreement under Partnership Obligations (a), the Agreement states that appellant "will comply with all rules and regulations of any real estate commissions and other governmental agencies in all states ... relating to the advertising and sale of real properties and shall comply with all statutes ... governing its sales activities". (emphasis supplied). There is no dispute in the instant case that appellant failed to agree in writing to honor fully the rights of the purchasers involved in this time-sharing plan as required pursuant to section 721.17 Florida Statutes (1981). We find that by participating in the time-share operation his activities brought him under the umbrella of Chapter 721 and he failed to comply with the writing and practical requirements of the statute.
In addition, as appellee correctly asserts, a second contract called the Assignment was drafted by Smith's attorney and executed by the parties involved six months after the initial Agreement. As the final order accurately reflects, on page 1 of the Assignment the language of the contract acknowledges the receipt and sufficiency of the Agreement initially executed. Appellant testified that he never told Beach Club that the Agreement and/or Assignment as drafted by him or his attorney were no longer in effect, or operating in a fashion other than that described in the contracts. *1289 Also, the record reveals that appellant admits being assigned six unsold unit weeks, yet he did not sign a document stating he would honor the rights of the purchasers, nor did he give them notice within 30 days of the date of the Assignment, as required by section 721.17(5), Florida Statutes (1981). The record further reveals that he sent the purchasers a letter explaining that the promissory notes had been assigned to him, so that all payments were to be made to appellant instead of Beach Club. By presenting, signing and executing the Agreement whereby Beach Club transferred its interest to appellant, appellant was promoting the sales of the time-share units as regulated by Chapter 721.
The hearing officer also correctly emphasized the Construction section of the Agreement found on page 11 of the Smith's contract, where it is asserted that the contract "constitutes the entire Agreement between the parties, and shall be construed in accordance with the laws of Florida". We find that the hearing officer's conclusion that Smith had knowingly purchased an interest in the time-share project is supported by competent substantial evidence.
Appellant next contends that the Division is really applying the 1983 version of Chapter 721 to his actions, resulting in an invalid retroactive application of a statute. We disagree. Section 721.17, Florida Statutes was modified by the legislature to expressly assert that the terms of the statute would be a presumed part of any instrument of time-share transfers, and also now expressly imposes a duty on transferees or owners of underlying fees to honor the rights of purchasers involved in the time-share contract. We acknowledge that the 1983 version of section 721.17 is a more artfully drafted statute. Even appellant admits that this version of the statute would have obviously applied to his actions in this case to impose liability on him for his failure to comply with the statute's requirements enacted to protect purchasers. However, appellee correctly asserts that the legislature's intent to provide for the protection of purchasers against any person involved in the operation of time-share plans is obvious from the 1981 version of chapter 721 as well. Because the legislature's intent was more artfully expressed in 1983 does not mean, as appellant argues, that the general intent to protect purchasers from participants in time-share plans was any less effective in 1981. Furthermore, appellee argues persuasively that in seeking legislative intent it is proper to consider acts passed at subsequent legislative sessions. Watson v. Holland, 20 So.2d 388 (Fla. 1944), motion denied, 325 U.S. 839, 65 S.Ct. 1408, 89 L.Ed.2d 1965 (1945). Also, in looking at the "Regulation" provisions of section 721.26 Florida Statutes (1983), it is obvious that the language authorizing the Division to take affirmative action to penalize violators of Chapter 721 is identical to the language found in the 1981 statute, and expresses the same intent to protect purchasers as found in the 1981 version.
Appellant further contends that it was Beach Club that failed to comply with section 721.17, Florida Statutes (1981). Therefore, appellant reasons that the contract Beach Club executed with appellant is void so appellant cannot be held liable pursuant to his involvement with the contract. We disagree. Appellant is not a naive, unsuspecting citizen that became unknowingly entangled in this enterprise. As appellee points out, and the hearing officer emphasized, appellant drafted the contract on which he relied to gain a benefit by participating in this time-share venture. Section 721.17, Florida Statutes (1981) prohibits a transfer of any portion of the seller's interest until the third-party purchaser (appellant) complies with the statutory requirements. Appellee argues persuasively that appellant, as drafter, did not expressly incorporate these requirements into his contract or perform the actions outlined in the statute, yet executed his contract and began collecting purchasers' money. We agree with the hearing officer that had appellant read section 721.17 prior to implementing his "program" in Florida, he would have had to realize that his involvement was contemplated by the legislature in Chapter 721.17 and would have been forced to incorporate such requirements *1290 into his Agreement to make it lawful. Now that appellant has arranged for, and accepted the Assignment and transfer of Beach Club's interests to himself for his financial gain he should be estopped from asserting that the contracts he drafted and executed are void. Also, it is well settled that contracts are construed against the drafter in the face of any ambiguities. Hurt v. Leatherby Ins. Co., 380 So.2d 432 (Fla. 1980).
Appellant also argues that had he read the statute he would not have been put on notice that his activities would be governed by Chapter 721, because "third-parties" is not specifically defined, nor is an "affirmative obligation" on a third-party expressly outlined. However, appellant ignores the regulation language found in section 721.26(5)(b) and (d) Florida Statutes (1981), where the statute clearly explains that if the Division has reason to believe that a violation of a chapter has occurred, it may institute enforcement against any developer, seller ... or other person:
b. The Division may issue an order requiring a developer, seller ... or other person or other assignees to cease and desist from an unlawful practice.
d. The Division may impose a civil penalty against any developer ... seller or other person for violation of this chapter. (emphasis supplied).
The language in the Regulation provision, section 721.26, contrary to appellant's argument, clearly outlines the affirmative action the Division is authorized to take with regard to violations of Chapter 721.
Next, appellant argues that in comparison to the penalty imposed on ITSC, the penalties imposed on appellant by the Division were disproportionately harsh, and the Division's findings were not supported by competent substantial evidence. We disagree. The Division was authorized by section 721.26, Florida Statutes (1981) to impose a civil penalty on appellant as high as $10,000.00, but only penalized appellant $5,000.00. In addition, the only other obligations imposed by the Division in its Final Order are the requirements that appellant comply with section 721.17 Florida Statutes (1981). As reflected in the Final Order, the hearing officer based his recommendation on appellant's testimony, and the Agreement, Addendum and Assignment that appellant drafted and/or approved. We find that to be sufficient competent substantial evidence to support the holding of the Final Order.
Based on appellant's initial premise that section 721.17, Florida Statutes (1981) does not readily place a burden on third-party transferees, appellant argues that the Division's interpretation which places a duty on him, created new rights and liabilities, so constituted an unauthorized rule. Here again, we agree with appellee that the intent of Chapter 721, Florida Statutes (1981) is obvious from the language found in the sections previously referred to, and section 721.17, Florida Statutes (1981) specifically outlines the obligations third-party participants have to purchasers in the time-sharing business. We also agree with appellee that had appellant read the statute before presenting his Agreement for execution in Florida, he would have been on notice of the statutory requirements involving third-party purchasers like himself. The Division did not "interpret" section 721.17 to create any rights or liabilities not already present in the language of the statute.
Appellant next argues that section 721.26(5) Florida Statutes (1981), which authorizes the Division to take affirmative action against a developer ... seller or any other person or assignee, is an unlawful delegation of authority, for it amounts to giving the Division unbridled discretion to pursue "other persons" such as appellant. Again appellant ignores the circumstance that the Division in its Final Order did nothing more than require Smith to follow the guidelines clearly pertaining to third-party purchasers such as himself as found in § 721.17, Florida Statutes (1981). The language of the Final Order's requirements traces the steps of the statute, and only carries out the purposes of Chapter 721 as designed to protect purchasers. Appellee argues persuasively that it is clear from the language of the chapter that the legislature only granted the Division the authority to carry out the purposes of Chapter 721, within the guidelines set out in Chapter *1291 721. There has been no unauthorized delegation of authority. See, Conner v. Joe Hatton, Inc., 216 So.2d 209 (Fla. 1968), appeal after remand, 240 So.2d 145 (Fla. 1970).
As this court stated in Department of Business Regulation, Div. of Florida Land Sales and Condominiums v. Smith, 471 So.2d 138 (Fla. 1st DCA 1985), when faced with another challenge to the Real Estate Time-Sharing Act:
Nothing has been shown that would justify our assuming that the questioned statute is arbitrary, unreasonable or oppressive in its operation. Nothing in the record shows the statute to be anything but a reasonable regulation to conserve the public welfare. Smith at 143.
Therefore we affirm the hearing officer's finding that Smith had received an Assignment of interest from Beach Club and had not agreed in writing pursuant to section 721.17, Florida Statutes (1981) to honor the rights of the time-share purchasers or assure the obligations of the seller to the time-share purchasers. As the Florida Supreme Court aptly stated in City of Miami Beach v. Berns, 245 So.2d 38 (Fla. 1971):
We are persuaded to apply the rule that a statute enacted for the public benefit should be construed liberally in favor of the public even though it contains a penal provision. In this posture a reasonable construction should be applied giving full measure to every effort to effectuate the legislative intent... . The intent of the act as reflected by its language and legislative setting is absorbed into and becomes a part of the law itself.
City of Miami Beach at 40.
The Final Order of the Department of Business Regulation, Division of Land Sales, Condominiums and Mobile Homes is AFFIRMED.
THOMPSON and NIMMONS, JJ., concur.

ON MOTIONS FOR CLARIFICATION AND REHEARING
JOANOS, Judge.
We grant appellee's motion for clarification of a sentence that was printed inadvertently in error and modify the last line of the opinion to read as follows: The Final Order of the Department of Business Regulation, Division of Land Sales, Condominiums and Mobile Homes is affirmed.
We deny appellant's motion for rehearing except to clarify that Smith received an assignment of interest from Beach Club in 34 unit weeks of 40 condominium units, and as described in the opinion, 28 of the unit weeks had already been sold, and the remaining 6 unit weeks assigned were unsold. Smith did not receive an assignment of 34 of the 40 units themselves, as our statement of what the hearing officer found misleadingly implies. However, we find that Smith's liability under Section 721.17 Florida Statutes (1981) remains the same and is not diminished by this clarification, for liability under Section 721.17 Florida Statutes (1981) is not contingent upon quantity of the interest assigned.
Appellant's motion for rehearing is otherwise denied.
THOMPSON and NIMMONS, JJ., concur.