Todd D. GAMMILL, M.D. *v.* PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY

00-1354                                    55 S.W.3d 763

Supreme Court of Arkansas
Opinion delivered October 4, 2001
[Petition for rehearing denied November 15, 2001.*]

---

* IMBER, J., not participating.

*Law Office of Warren P. Gammill*, by: *Warren P. Gammill; Ralph C. Ohm*; and *Quattlebaum, Grooms, Tull & Burrow, PLLC*, by: *Leon Holmes*, for appellant.

*Friday, Eldredge & Clark*, by: *John Dewey Watson* and *Robert S. Shafer*, for appellee.

TOM GLAZE, Justice. This case presents us with the opportunity to clarify the law as it pertains to "total disability" clauses in insurance policies. At issue is whether or not a cardiologist was totally disabled following an accident which left him unable to perform many of the duties of his occupation.

In 1994, Dr. Todd Gammill purchased two disability insurance policies — an individual disability income policy and business over-head expense policy — with Provident Life and Accident Insurance Company, listing his occupation on the application as "invasive cardiologist."[1] Under the terms of the policies, Provident was to make monthly benefit payments in the event Dr. Gammill should sustain total disability as defined in the policies. Prior to December of 1995, Dr. Gammill operated as a solo practitioner in the field of cardiology in Hot Springs. On December 22, 1995, he was severely injured in an automobile accident; within hours of that accident, he suffered a cerebral stroke as a result of the dissection of the left carotid artery in his neck. Following his stroke, he experienced significant impairment in motor skills and a marked loss of sensitivity in his right hand. He also aggravated an earlier back injury. As a result of his injuries, Dr. Gammill was forced to cease his practice of invasive cardiology, although, with the assistance of other doctors and medical personnel, he was able to maintain part of his non-invasive cardiology practice upon joining a cardiology clinic in Little Rock as a salaried employee.

After his accident, Dr. Gammill filed a claim with Provident, and beginning April 1, 1996, the insurance company began making payments under the total-disability provisions in the policy. How-ever, in February of 1997, Provident requested that an independent neurologist examine Dr. Gammill. That doctor subsequently opined that Dr. Gammill's disability prevented him from perform-ing any invasive cardiac procedures, and that his motor and sensory losses would be permanent. Despite this evaluation, Provident con-cluded that Dr. Gammill was continuing to work in his profession, and thus suspended payments of monthly total-disability benefits in April of 1997. However, after Dr. Gammill and his attorney con-tacted the insurer, total-disability payments were restored after about seven months, with Provident making payments under a reservation of rights.

In December of 1997, Provident filed a complaint for declara-tory judgment, asserting that Dr. Gammill continued to perform the substantial and material duties of a cardiologist, and was thus not totally disabled under the terms of the policy. Dr. Gammill answered, and also filed a counterclaim against Provident, alleging breach of contract and bad faith and seeking payment of additional

---

[1] Invasive cardiology involves procedures whereby the cardiologist physically invades the patient's body, either by breaking the skin or entering through the mouth; common invasive procedures include things such as catheterizations, angiograms, pacemaker insertions, angioplasty, coronary stinting, and other such procedures.

benefits, to which he alleged he was entitled under his policy. The parties filed cross-motions for summary judgment, and after a hearing, the trial court denied Dr. Gammill's motion, but granted Provident's, ruling that Dr. Gammill was still capable of performing the "majority" of the duties as a cardiologist and was, in fact, working as a cardiologist.

■■ On appeal, we must construe the phrase "total disability." First, however, we must deal with the procedural issues raised by Provident. Citing *Liberty Mutual Ins. Co. v. Thomas*, 333 Ark. 655, 971 S.W.2d 244 (1998), the insurer asserts that we cannot review the denial of Dr. Gammill's motion for summary judgment. While ordinarily an order denying a motion for summary judgment is not an appealable order, such an order is appealable when it is combined with a dismissal on the merits that effectively terminates the proceeding below. *See* Ark. R. App. P. 2(a)(2); *Robinson v. Beaumont*, 291 Ark. 477, 725 S.W.2d 839 (1987); *Karnes v. Trumbo*, 28 Ark. App. 34, 770 S.W.2d 199 (1989). Here, the trial court granted Provident's summary judgment, and at the same time, denied Dr. Gammill's, dismissing his claims with prejudice. In these circumstances, Dr. Gammill may properly appeal the trial court's denial of his summary-judgment motion.

■ Provident also contends that Dr. Gammill's arguments regarding the ambiguity of the policy were not preserved because the trial court did not rule on them. We dismiss this suggestion as well, because the trial court, in ruling in favor of the insurer, concluded that the relevant policy terms were unambiguous. Had the court determined that the terms were ambiguous, it would have been required, as a matter of law, to rule in favor of the insured, Dr. Gammill, because there was no disputed extrinsic evidence offered in connection with the summary-judgment motions on the meaning of "total disability." *See, e.g., Farm Bureau Mutual Ins. Co. v. Foote*, 341 Ark. 105, 14 S.W.3d 512 (2000); *Smith v. Prudential Prop. & Cas. Ins. Co.*, 340 Ark. 335, 10 S.W.3d 846 (2000). Therefore, we now turn to the issue presented on appeal: was Dr. Gammill totally disabled within the meaning of the policy issued by Provident?

Arkansas has grappled with the issue of what constitutes "total disability" since at least 1910. In that year, this court decided the case of *Industrial Mutual Indemnity Co. v. Hawkins*, 94 Ark. 417, 127 S.W. 451 (1910), wherein it affirmed the trial court's refusal to give the insurer's requested instruction, which would have required the jury to find that, in order to be totally disabled, the insured would have to be "prevent[ed] . . . from the prosecution of any and every kind of business." The court in *Hawkins* noted authorities that

instructed that "[t]otal disability exists, although the insured is able to perform occasional acts, if he is unable to perform any substantial portion of the work connected with his occupation," *id*. at 420, and concluded that to use the instruction proffered by the insurer would have meant that an insured could not recover "unless he sustained an injury that rendered him absolutely helpless both mentally and physically." *Id*. at 421. Because such an interpretation of "total disability" would make it virtually impossible for an insured ever to recover, the court held in favor of the insured.

In the years since the *Hawkins* decision, this court has had numerous occasions to consider similar questions. In each case, the outcome has depended on the policy definition of "total disability," but nevertheless, the general consensus of most of these cases was that an insurance policy requiring the insured to be "totally disabled" "[does] not require that he shall be absolutely helpless, but such a disability is meant which renders him unable to perform all the substantial and material acts of his business or the execution of them in the usual and customary way." *Aetna Life Ins. Co. v. Spencer*, 182 Ark. 496, 32 3S.W.2d 10 (1930); *see also Mutual Life Ins. Co. of New York v. Dowdle*, 189 Ark. 296, 71 S.W.2d 691 (1934) (disability is total if it prevents a party from performing acts necessary to the prosecution of his business in substantially the usual and customary manner).

A handful of cases from the 1940s appeared to take a more literal or restrictive approach to construing disability policies, holding that where an insured was unable to work at his occupation but could still perform "some work," he would be precluded from recovering under the policy. *See Metropolitan Life Ins. Co. v. Guinn*, 199 Ark. 994, 136 S.W.2d 681 (1940); *General American Life Ins. Co. v. Chatwell*, 201 Ark. 1155, 148 S.W.2d 333 (1941). However, in *Alexander v. Mutual Benefit Health & Accident Ass'n*, 232 Ark. 336 S.W.2d 64 (1960), this court rejected the rationale of cases like *Guinn* and *Chatwell*, concluding that such reasoning was inconsistent with other cases that utilized a more liberal construction of disability policies. The *Alexander* court suggested the court's decisions defining total disability were inconsistent and attempted to clarify them, stating that it was "unwilling to follow" those cases that strictly interpreted total disability clauses. Justice George Rose Smith, writing for the court, noted that the court has more "consistently refused to construe such clauses literally, for in that event the insured could recover only if he were continuously and helplessly confined to his bed." *Id*. The court in *Alexander* held that the issue of total disability was a question of fact for the jury, and that

substantial evidence existed to support the jury's findings in that case.

Subsequent cases have consistently applied this liberal construction. For example, in *Avemco Life Ins. Co. v. Luebker*, 240 Ark. 349, 399 S.W.2d 265 (1966), this court rejected the insurance company's contention that a jury instruction on total disability "should contemplate such a state of disability as to prevent the insured from performing *all* (rather than *any*) of the substantial and material acts necessary to the prosecution of his business." *Avemco*, 240 Ark. at 351-51 (emphasis in original). Rather, in affirming the jury's finding of total disability, the court noted that in more recent cases, it had approved jury instructions using the word "any" as appropriate under the more liberal rule to which the court adhered.

Similarly, in *Continental Cas. Co. v. Davidson*, 250 Ark. 35, 463 S.W.2d 652 (1971), the insured had a policy that was to pay him total-disability benefits "[w]hen, as a result of an injury . . . the insured is wholly and continuously disabled and prevented from performing each and every duty pertaining to his occupation." *Davidson*, 250 Ark. at 37. The insurer had requested an instruction which would have had the jury find against the insured if it believed he was unable to perform "all the substantial and material acts necessary to the prosecution, in a customary manner, of any occupation or business for which [he was] reasonably qualified . . ." This court rejected Continental Casualty's argument, stating as follows:

> [I]t can be said that [the instruction is] ambiguous in that [it] would require [the insured] to be unable to perform *all* the substantial and material acts necessary to the prosecution, in a customary manner, of any occupation or business for which the insured is reasonably qualified by reason of his education, training and experience. It is only necessary that he be unable to perform *any* of such acts in order to qualify for benefits. [Citing *Avemco* and *Alexander*.] We clearly expressed a preference for an instruction using the word "any" in *Avemco*. If the words "any of" had been substituted for "all" in the offered instructions, appellant would have clearly been entitled to have one of them given.

*Id.* at 42-43.

The most recent discussion of the total-disability issue is found in *Colonial Life & Accident Ins. Co. v. Whitley*, 10 Ark. App. 304, 664 S.W.2d 488 (1984), in which the court of appeals summarized seventy years of cases on the subject. The *Whitley* court stated the controlling rule in these cases as follows:

[I]t is only necessary that it be shown that he is unable to perform *any one or more* of the substantial or material acts of his occupation in his usual and customary manner. Nor does the mere fact that one continues to work at his regular job establish a lack of disability. It is only a factor to be considered, and *where an insured is able to continue his employment with the aid of his fellow employees or in some manner other than his usual and customary one, he may still be "disabled."*

*Whitley,* 10 Ark. App. at 307-08 (citations omitted; emphasis added).

We agree that *Whitley* sets out the correct statement of the law, and the only question left to be decided is whether or not Dr. Gammill falls within Provident's definition of "total disability." "Total disability" was defined in Provident's insurance policy to mean that "due to injuries or sickness you are not able to perform the substantial and material duties of your occupation." Dr. Gammill's occupation under the policy was listed as being a cardiologist.

We note at this point that the present case is before us in a different procedural posture than any of the other cases cited. In each of those instances, this court was reviewing a jury's verdict to determine if the facts were sufficient to support a finding of total disability.[2] Here, however, the appeal is from an order granting summary judgment, and the parties have agreed that the facts are undisputed.

As discussed above, we agree with Dr. Gammill that the controlling law here is whether he can perform any of the substantial and material acts of his occupation in his usual and customary manner. In this respect, Provident concedes that Dr. Gammill can no longer perform at least three substantial and material duties of his occupation as a cardiologist. First, Dr. Gammill cannot perform invasive procedures at all. Second, because of the injuries to his back, he cannot conduct hospital rounds on his patients. Finally, due to the loss of sensitivity in the fingers of his right hand, he cannot complete cardiovascular exams on his patients in his usual manner, because he cannot feel cardiac impulses in the patients' chests.[3] More specifically, Dr. Gammill's injuries compelled him to

---

[2] All cases cited have dealt with the proper definition or use of total disability in the context of whether proper jury instructions were given or whether a directed verdict should have been granted.

[3] Dr. Gammill cannot perform this latter task with his left hand, either, as he lost the tips of the first two fingers on that hand in an unrelated accident years ago.

close his solo practice in Hot Springs and to join a clinic in Little Rock so that other doctors can help him with his duties. He works one-half of the weekly hours he used to work, and he has fifty percent fewer patients. Provident does not controvert these factual matters, and indeed, in oral arguments before the trial court, agreed that it was "appropriate . . . to accept the facts as recited" by Dr. Gammill in three affidavits. Thus, the facts contained in the record are sufficient to decide the case, and our task is simply to decide whether the trial court correctly interpreted the law as applied to these undisputed facts. We conclude that it did not.

■■ As noted above, the policy Provident issued to Dr. Gammill provided that he would be considered totally disabled if he were to become unable to perform "the substantial and material duties of [his] occupation." This definition does not speak in terms of "any," "all," "some," or "a majority" of the insured's duties, and since different reasonable interpretations can be given this policy's definition of total disability, the policy must be construed in favor of the insured, Dr. Gammill. *See Smith*, 340 Ark. 335, 10 S.W.3d 846. Even though Provident's policy definition fails to specify or quantify what total disability means, the trial court attempted to do so by inserting the statement that Dr. Gammill could still perform "the majority" of his duties and was therefore not totally disabled. However, none of Arkansas' cases lend themselves to such an interpretation. Simply stated, whether an insured can perform "the majority" of his duties is not the correct standard. Once again, the relevant inquiry is whether the insured is prevented from performing *any* of the substantial and material duties of his occupation, and as already stated above, Provident concedes that Dr. Gammill is prevented from performing three of the substantial and material duties necessary to being a cardiologist. Applying the correct standard, we conclude that the trial court erred in granting summary judgment in Provident's favor. As the facts are settled and undisputed by either party, it is unnecessary for this court to remand this issue for further development.

■ We do, however, need to address Provident's argument that Insurance Department Rule and Regulation 18 supplants this court's caselaw and that it, rather than our holdings, controls the outcome of this case. Provident asserts that Regulation 18 provides that total disability may be defined by insurers as the inability to perform all of the substantial and material duties of one's regular occupation. During oral arguments, Provident also argued that Regulation 18 states that "total disability" cannot mean one material and substantial duty. We disagree. That regulation, governing the kinds of policies that insurance companies may issue, provides

merely that "[a] general definition of total disability shall not be more restrictive than one requiring the individual to be totally disabled from engaging in any employment or occupation for which he is or becomes qualified by reason of education, training or experience and not in fact engaged in any employment or occupation for wage or profit." This language is not made a part of the contract between the insurer and the insured, and it merely sets a floor or a minimum standard for total-disability policies. It certainly does not supplant or replace this court's holdings on the construction of insurance policies, and we reject Provident's argument to the contrary.

Because we reverse and remand for entry of judgment with respect to Dr. Gammill's first point on appeal, we find it unnecessary to address his second and third points regarding waiver and estoppel. However, Dr. Gammill also raises an argument regarding certain additional benefits under his policy.[4] The so-called "UPDATE" provision in his policy provided that he would be able to receive automatic increases in the monthly benefit paid for total disability. The clause at issue stated as follows:

> This provision provides automatic increases in the Monthly Benefit for Total Disability shown on Page 3. . . . *An UPDATE increase will apply to a Period of Disability which starts after the effective date of the increase. It must qualify as a separate Period of Disability. If the premium for the policy is being waived on the effective date of the increase, the premium for the increase will also be waived.* When you resume paying premiums for the policy, you must also start paying the premium for the increases.

The emphasized language is the portion to which both sides point in support of their argument. Dr. Gammill contends that he was entitled to UPDATE benefits because he was within a period of disability that started after the effective date of the increase. His period of disability started on December 22, 1995, and the effective date of the "First UPDATE Increase" was, according to the policy, July 18, 1995. Provident, on the other hand, contends that an UPDATE increase does not apply to an existing period of disability, and that upon disability, benefits begin to be paid — and stay — at

---

[4] Provident asserts that Dr. Gammill did not preserve this point because the trial court did not rule on the issue. We disagree. When the trial court found that Dr. Gammill was not entitled to any benefits, it implicitly found that he was not entitled to the UPDATE benefits.

the level of the most recent UPDATE increase because additional premiums for the higher UPDATE benefits have not been paid.

■■ Thus, there is an ambiguity inherent in the UPDATE provision concerning the effective date of the increase and the question of whether an increase applies during a "period of disability." Our general rule has been stated many times: "If . . . the policy language is ambiguous, and thus susceptible to more than one reasonable interpretation, we will construe the policy liberally in favor of the insured and strictly against the insurer." *Norris v. State Farm Fire & Cas. Co.*, 341 Ark. 360, 16 S.W.3d 242 (2000). The exception to this general rule is where disputed extrinsic evidence is offered to establish what the ambiguous language means. *See Smith*, 340 Ark. 335, 10 S.W.3d 846. No disputed extrinsic evidence was offered in connection with the motions for summary judgment on the UPDATE provision. Applying the general rule, and construing the ambiguous term regarding the UPDATE benefits in Dr. Gammill's favor, we conclude that he was entitled to those benefits under the terms of the policy.

The order of the trial court is reversed, and the matter remanded for entry of judgment in favor of Dr. Gammill.