# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1132

_____

| | | |
|---|---|---|
| Linda Fuller, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| Hartford Life Insurance Company, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted:  December 10, 2001

Filed:  March 6, 2002

_____

Before LOKEN and BYE, Circuit Judges, and BOGUE,[1] District Judge.

_____

BYE, Circuit Judge.

Hartford Life Insurance Company appeals the district court's[2] determination that its policy provided $500,000 in accidental death benefits to Linda Fuller for the drowning death of her husband, Larry Fuller.  We affirm.

_____

[1]The Honorable Andrew W. Bogue, United States District Judge for the District of South Dakota, sitting by designation.

[2]The Honorable William R. Wilson, United States District Judge for the Eastern District of Arkansas.

I

Larry Fuller, an Arkansas resident, went scuba diving while vacationing in Mexico. He motioned the dive boat for assistance after experiencing trouble with his regulator. He drowned after grabbing the dive boat's ladder in an attempt to board the boat.

Mr. Fuller had common carrier travel insurance with Hartford, a Connecticut company, through his membership in the Exxon Travel Club, a Texas corporation. The policy provided coverage for injury which "occurs while [the insured] is . . . a passenger on, boarding or alighting from a Common Carrier." The policy defined a Common Carrier as "a conveyance operated by a concern, other than the Policyholder, organized and licensed for the transportation of passengers for hire and operated by an employee of that concern." The dive boat in issue, El Magnifico, was operated by the Snorkel Center, licensed to carry 18 passengers, and captained by Snorkel Center employee Daniel Cervantes.

Linda Fuller, Larry's widow, sued to recover the accidental death benefits provided by Hartford's policy. After the parties brought cross-motions for summary judgment, the district court granted Mrs. Fuller's motion, holding El Magnifico was a common carrier under the terms of the policy, and Mr. Fuller's drowning injuries occurred while he was boarding the boat. The district court also awarded Mrs. Fuller $125,000 in attorney's fees.

II

We review the district court's order granting summary judgment by applying the same standards as the district court. United Fire & Cas. Co. v. Fidelity Title Ins. Co., 258 F.3d 714, 718 (8th Cir. 2001). This case involves the interpretation of the

contractual provisions of an insurance policy, a question of law we review de novo. Id.

Hartford contends Texas law applies because Mr. Fuller purchased the Hartford policy through the Exxon Travel Club, a Texas corporation. We disagree. The Exxon Travel Club is not even a party, and Texas has no interest in the outcome of this suit. Although the district court did not specify which state's laws it applied, both parties assume it applied Arkansas law. In our de novo review, we "look to the choice-of-law principles of the forum state [in this case Arkansas] and then apply the same law to the case as the forum state would." PVI, Inc. v. Ratiopharm GmbH, 253 F.3d 320, 329 (8th Cir. 2001). When, as here, there is no choice-of-law provision in the insurance contract, Arkansas applies the "most significant relationship test." See Heating & Air Specialists, Inc. v. Jones, 180 F.3d 923, 929 (8th Cir. 1999). We conclude Arkansas law applies because Mr. Fuller was a lifelong resident of Arkansas, received the credit card application from Exxon in Arkansas, and received all Exxon bills and information about the Travel Club at his residence in Arkansas.

Hartford also contends El Magnifico is not a common carrier because the Snorkel Center did not hold itself out to the public as a concern which transported people for hire, and instead operated El Magnifico solely for the use of its own patrons. Hartford relies upon a judicial or common law definition of "common carrier." See R.R. Comm'n of Tex. v. United Parcel Serv., Inc., 614 S.W.2d 903, 910 (Tex. App. 1981) (defining common carrier as a "person engaged in transporting people or things from place to place for hire, and who holds himself out to the public to do so").

Because Arkansas law applies, we are not concerned with a common law definition under Texas law. In any event, a common law definition would be immaterial because the policy defines the term "common carrier." See Nelson v. Becton, 929 F.2d 1287, 1289-90 (8th Cir. 1991) (rejecting the general meaning of a

term when a policy defines it); see also Enterprise Tools, Inc. v. Export-Import Bank, 799 F.2d 437, 439 (8th Cir. 1986) ("[W]here a term is defined in the policy, the court is bound by the policy definition").  As stated above, the policy defined a Common Carrier as "a conveyance operated by a concern, other than the Policyholder, organized and licensed for the transportation of passengers for hire and operated by an employee of that concern."   El Magnifico was operated by the Snorkel Center, a concern other than Mr. Fuller.  In addition, the Snorkel Center was organized and licensed for the transportation of passengers for hire; El Magnifico was licensed to carry 18 passengers, and the Snorkel Center charged all the passengers (only some of whom were scuba diving) for the boat ride.  Finally, the boat was operated by an employee of the Snorkel Center, Daniel Cervantes.

Hartford claims Mr. Fuller's injury did not occur while he was boarding El Magnifico, as required by the policy, supra at 2. Hartford contends Mr. Fuller was injured *before* attempting to board the dive boat, when he first experienced trouble with his regulator and his lungs began to fill with water.  We disagree with Hartford's attempt to parse the undisputed facts so finely.  It appears Mr. Fuller's lungs were filling with water both before and after he grabbed the boat's ladder and attempted to board.  Thus, his injury was an ongoing one, and is not limited to the period preceding his fateful attempt to board the dive boat.  The policy neither addresses nor excludes coverage for a continuing injury that starts before (and is still occurring while) an insured boards a common carrier.  Under Arkansas law, then, we must construe the policy to cover such an injury.  See Gammill v. Provident Life & Acc. Ins. Co., 55 S.W.3d 763, 768 (Ark. 2001) (construing an insurance policy in favor of the insured where policy's definition did not speak in terms that specifically addressed disputed issue and could be given different reasonable interpretations).

Hartford also contends there is no coverage unless both the "accident" (the event that caused the intake of water into Mr. Fuller's lungs) and the "injury" occur during the boarding process, because the policy required an injury to result "directly

from accident." We disagree. The word "directly" requires a *causal* relationship between accident and injury, not a simultaneous *temporal* relationship. Hartford could have written the policy in a manner that required the accident to occur during boarding, but did not. See, e.g., Wynne v. Amex Ins. Co., No. 3-97-CV-192-AH, 1998 WL 512943, at *3 (N.D. Tex. Aug. 12, 1998) (construing policy that provided benefits if "the Covered Person sustains Injury as a result of an Accident which occurs while . . . boarding, or alighting from or being struck by a Common Carrier Conveyance"), aff'd, 178 F.3d 1291 (5th Cir. 1999) (unpublished table disposition).

Hartford further argues there should be no coverage unless some causal relationship exists between the risks associated with boarding a common carrier and the insured's accident. We disagree. Under a travel accident policy of the type issued by Hartford, there need be no relationship between the accident and the risks associated with common carriers. See Hensley v. Life Ins. Co. of N. Am., 551 F.2d 35, 37 (3d Cir. 1977) (holding an insured can expect coverage under the terms of a time and place accidental death policy as long as "the insured event occurs within the time and at the place of coverage").

Finally, Hartford appeals the district court's award of fees. An Arkansas statute provides for an award of "all reasonable attorney's fees for the prosecution and collection of [a] loss" in cases where an insurance company is liable for the loss and "fail[s] to pay the losses within the time specified in the policy after demand is made." Ark. Code Ann. § 23-79-208. We review for an abuse of discretion. Pinkham v. Camex, Inc., 84 F.3d 292, 294 (8th Cir. 1996).

Mrs. Fuller's counsel submitted two affidavits in support of the request for fees. The first set forth the contingent fee agreement whereby the expected fee would be 1/3 of the $500,000 policy limits, or $166,667. The second set forth an effective hourly rate of $350 for plaintiff's cases, and estimated the amount of time spent on the matter at 250-300 hours, plus 90-100 hours by an associate attorney, plus an

additional 20 hours by a paralegal. Mrs. Fuller's counsel did not have an actual hourly rate for plaintiff's work because he generally charged plaintiffs a contingent fee. He arrived at an "effective" hourly rate by dividing the annual income he generated from plaintiff's work by the amount of time he spent on such matters.

The district court considered both affidavits in arriving at a final award of $125,000. The district court also considered the experience and ability of plaintiff's counsel, the time and work required to perform the service properly (which included traveling to Mexico to take several depositions), the novelty and difficulty of the issues presented, the fee customarily charged for similar services in the locality, whether the fee was fixed or contingent, and the amount involved and result obtained — all appropriate factors to consider in determining the reasonableness of attorney's fees pursuant to § 23-79-208. See Shepherd v. State Auto Prop. & Cas. Ins. Co., 850 S.W.2d 324, 330 (Ark. 1993). Although the district court's award was very generous, we cannot say the district court abused its discretion.

III

We affirm the judgment of the district court in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.