ANDERSON GAS & PROPANE, INC., and Don Anderson *v.*
WESTPORT INSURANCE CORPORATION

CA 03–859 140 S.W.3d 504

Court of Appeals of Arkansas
Division II
Opinion delivered January 7, 2004

[Petition for rehearing denied February 11, 2004.]

*Everett Law Firm*, by: *Jason Harris Wales*, for appellants.

*Watts, Donovan & Tilley, P.A.*, by: *David M. Donovan, Richard Nathaniel Watts*, and *Michael McCarty Harrison*, for appellee.

JOHN F. STROUD, JR., Chief Judge. Appellant Anderson Gas & Propane, Inc., sells and distributes gasoline, gasoline tanks, propane, propane tanks, and fertilizer; appellant Don Anderson is a shareholder and an officer of the company. (We will refer to both parties as "Anderson.") Anderson appeals from the award of summary judgment to Westport Insurance Corporation in its action seeking a declaration that Westport owed it a defense of several lawsuits filed by third parties against Anderson and reimbursement for the damages incurred therein. In granting summary judgment, the trial court held that the insurance policy's pollution exclusion unambiguously barred recovery. We hold that the exclusion is ambiguous and that this case must be reversed and remanded for trial.

### Factual and Procedural History

Coppermine Lodge, a fishing resort on Beaver Lake in Benton County, was one of Anderson's customers. The lodge had a gasoline-distribution system that included an above-ground tank that was connected to a dispensing pump by an underground pipe. In January 2000, the owners of the lodge discovered gasoline

percolating out of the ground and called the Arkansas Department of Environmental Quality, which found a leak in the underground pipe. The leaked gasoline migrated to the wells of adjoining landowners, who sued the lodge's owners, its former owners, and Anderson for bodily injury and property damage.

Anderson had a general commercial-liability insurance policy with Westport during the relevant time period. The policy obligated Westport to pay Anderson those sums that Anderson became legally obligated to pay as damages because of bodily injury or property damage to which the coverage applied and to defend Anderson against any suit seeking such damages. The policy contained the following exclusion, on which Westport relied to deny coverage:

> This insurance does not apply to:
>
> f. Pollution
> (1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.
> (2) Any loss, cost or expense arising out of any:
> (a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or
> (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants."

The policy defined the term "pollutants" as follows: " 'Pollutants' mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

Anderson requested that Westport defend the lawsuits filed against it by the neighboring landowners and that it provide coverage for the loss. Relying on the pollution exclusion, Westport refused to provide Anderson with a defense or coverage.

According to Anderson, it has settled fifteen of the sixteen lawsuits filed against it and is currently defending one remaining lawsuit. Anderson sued Westport for breach of contract and sought a declaratory judgment affirming Westport's duty to defend and provide coverage for this loss. It also sued the insurance agent that sold the policy but later nonsuited that claim. In granting summary judgment to Westport, the circuit court stated:

> 1. That the Total Pollution Exclusion in the policy is applicable and enforceable consistent with its plain and ordinary meaning as the Court finds it not to be ambiguous.

> 2. That the Total Pollution Exclusion is applicable as the damages at issue are resultant from the dispersal, seepage and migration of gasoline which is a "pollutant" as defined by the policy.

It is from this order that Anderson has appealed.

### Standard of Review

In reviewing summary-judgment cases, we determine whether the trial court's grant of summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. *Alberson v. Automobile Club Interins. Exch.*, 71 Ark. App. 162, 27 S.W.3d 447 (2000). The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is not a genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.* All proof submitted with a motion for summary judgment must be viewed in the light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *McWilliams v. Schmidt*, 76 Ark. App. 173, 61 S.W.3d 898 (2001). Summary judgment is not appropriate where evidence, although in no material dispute as to actuality, reveals aspects from which inconsistent hypotheses might reasonably be drawn and reasonable minds might differ. *Lee v. Hot Springs Village Golf Schs.*, 58 Ark. App. 293, 951 S.W.2d 315 (1997).

## Construction of the Exclusion

 In reviewing an insurance policy, the appellate court follows the principle that, when the terms of the policy are clear, the language in the policy controls. *Castaneda v. Progressive Classic Ins. Co.*, 83 Ark. App. 267, 125 S.W.3d 835 (2003). The language in an insurance policy is to be construed in its plain, ordinary, popular sense. *Id.* If a policy provision is unambiguous, and only one reasonable interpretation is possible, the court will give effect to the plain language of the policy without resorting to rules of construction. *Id.* Language is ambiguous if there is doubt or uncertainty as to its meaning and it is fairly susceptible to more than one reasonable interpretation. *Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 57 S.W.3d 165 (2001). If the policy language is ambiguous, the policy will be construed liberally in favor of the insured and strictly against the insurer. *Castaneda v. Progressive Classic Ins. Co., supra.* Under Arkansas law, the intent to exclude coverage in an insurance policy that has been drafted by the insurer without consultation with the insured should be expressed in clear and unambiguous language. *Pizza Hut of America, Inc. v. West Gen. Ins. Co.*, 36 Ark. App. 16, 816 S.W.2d 638 (1991). Whether the language of a policy is ambiguous is a question of law to be resolved by the court. *Castaneda v. Progressive Classic Ins. Co., supra.* If ambiguity exists, parol evidence is admissible and the meaning of the ambiguous term becomes a question for the fact-finder. *Deal v. Farm Bureau Mut. Ins. Co. of Ark., Inc.*, 48 Ark. App. 48, 889 S.W.2d 774 (1994).

 An insurer may contract with its insured upon whatever terms the parties may agree upon that are not contrary to statute or public policy. *Jordan v. Atlantic Cas. Ins. Co.*, 344 Ark. 81, 40 S.W.3d 254 (2001). Absent statutory strictures to the contrary, exclusionary clauses are generally enforced according to their terms. *Id.* The terms of an insurance contract are not to be rewritten under the rule of strict construction against the company issuing it so as to bind the insurer to a risk that is plainly excluded and for which it was not paid. *Id.*

The Arkansas decision most relevant to the question presented here is *Minerva Enterprises, Inc. v. Bituminous Casualty Corp.*, 312 Ark. 128, 851 S.W.2d 403 (1993), wherein the supreme court held that a pollution exclusion in an insurance policy (similar to the one at issue here) was ambiguous and that the trial court had

erred in granting summary judgment to the insurance company. The court held that it was unclear from the policy language that the single back-up of a septic tank in a mobile-home park was necessarily the kind of damage that the clause was intended to exclude. The parties' disagreement concerned the interpretation of the word "pollutants" as it was used in the exclusion, which stated:

> It is agreed that the exclusion relating to the actual, alleged or threatened discharge, dispersal, release or escape of pollutants is replaced by the following:
>
> (1) Bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants.
>
> . . . .
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

312 Ark. at 129-30, 851 S.W.2d at 404.

The insured argued on appeal that the definition of pollutants was intended to exclude industrial wastes, not common household wastes, and at best, the definition was ambiguous. The supreme court reviewed several decisions from other states that dealt with this issue and stated:

> The pollution exclusion is a recent innovation of the insurance industry that has spawned considerable litigation. Among the cases we find a group that deals with the definition of pollution. This line of cases supports the premise that the exclusion is intended to prevent persistent polluters from getting insurance coverage for general polluting activities, whether the insured or a third party, and was never intended to cover those who are not active polluters but had merely caused isolated damage by something that could otherwise be classified as a "contaminant" or "waste."
>
> . . . .

We are persuaded by these cases and their rationale and find the pollution exclusion in the case before us is, at least, ambiguous. It is not clear from the language of the policy that the single back-up of a septic tank in a mobile home park is necessarily the kind of damage the clause was intended to exclude. We find appellant's interpretation that it was intended for industrial polluters to be a plausible one. Further, while the word "waste" is used as one of the examples of pollutants in the policy definition, as mentioned in *[Molton, Allen & Williams, Inc. v. St. Paul Fire & Marine Ins. Co.*, 347 So.2d 95 (Ala. 1977)], under the rule of *ejusdem generis*, the term "waste" must be considered within the context of the entire list, all of which are pollutants related to industrial waste.

We hold there was an unresolved disputed issue of fact. *See Tillotson v. Farmers Insurance Co.*, 276 Ark. 450, 637 S.W.2d 541 (1982). The initial determination of the existence of an ambiguity rests with the court, and if ambiguity exists, then parol evidence is admissible and the meaning of the ambiguous terms becomes a question for the fact finder. *Pizza Hut of America Inc. v. West General Insurance Co.*, 36 Ark. App. 16, 816 S.W.2d 638 (1991).

312 Ark. at 130-34, 851 S.W.2d at 404-06.

Citing *Minerva Enterprises, Inc. v. Bituminous Casualty Corp.*, Anderson argues that, as a matter of law, the term "pollutants" does not include gasoline because pollution exclusions like the one involved here are aimed at industrial, persistent polluters. Also relying on that case, Westport asserts that the gasoline leak that occurred was exactly the type of situation to which such exclusions apply. That case, however, does not hold that, as a matter of law, either position is correct. The court found the term "pollutants" to be ambiguous and remanded the case for trial. We believe that the same result must occur in this appeal.

 The general rule is that the pleadings against the insured determine the insured's duty to defend. *Madden v. Continental Cas. Co.*, 53 Ark. App. 250, 922 S.W.2d 731 (1996). The duty to defend is broader than the duty to pay damages, and the duty to defend arises where there is a possibility that the injury or damage may fall within the policy coverage. *Id.* The insurer must defend the case if there is any possibility that the injury or damage may fall within the policy coverage. *Id. See also Murphy Oil USA,*

*Inc. v. Unigard Sec. Ins. Co.*, 347 Ark. 167, 61 S.W.3d 807 (2001). At this point, there is a possibility that the injury or damage may fall within the policy coverage.

▇ In the policy involved in this action, Westport failed to include the term "gasoline" in the policy's definition of "pollutants." Also, the terms "irritant" or "contaminant" can reasonably be construed as including "gasoline" — or not including it. We believe, therefore, that the language of the exclusion is fairly susceptible to more than one reasonable interpretation and, thus, is ambiguous. Accordingly, a genuine issue of material fact remains for trial, and the summary judgment for Westport must be reversed.

Reversed and remanded.

PITTMAN and BIRD, JJ., agree.