STATE AUTO PROPERTY & CASUALTY INSURANCE
COMPANY *v.* The ARKANSAS DEPARTMENT of
ENVIRONMENTAL QUALITY; Shirley A. Burch,
as Trustee of the Charles E. and Shirley A. Burch Living Trust;
Glenda O'Regan; Harbor General Store, Inc.;
and Joplin Development, L.L.C.

06-1480                                    258 S.W.3d 736

Supreme Court of Arkansas
Opinion delivered June 14, 2007

*Kilpatrick, Williams, Smith & Meeks, LP*, by: *Gene Williams*, for appellant.

*Chisenhall, Nestrud & Julian, P.A.*, by: *Charles R. Nestrud* and *Jason W. Early*, for appellee Shirley A. Burch, as Trustee of the Charles E. and Shirley A. Burch Living Trust.

ROBERT L. BROWN, Justice. Appellant State Auto Property and Casualty Insurance Company ("State Auto") appeals from an order of the Pulaski County Circuit Court and raises two points: (1) the summary judgment granted to Shirley A. Burch, as Trustee of the Charles E. and Shirley A. Burch Living Trust (the "Burch Trust"), should be reversed because the cases relied upon by the circuit court were wrongly decided, and (2) even if those cases were correctly decided, the summary judgment granted to the Burch Trust should be reversed because the parol evidence offered by State Auto removed any purported ambiguity in the policy language. We agree with State Auto that the summary judgment must be reversed, and we remand the matter to the circuit court for further proceedings.

The facts are these. In June of 1999, Harbor General Store, Inc., and Joplin Development, L.L.C. ("Joplin"), installed underground tanks for their service station named Harbor General Store located on State Highway 270 East in Mt. Ida. The tanks were for the storage of gasoline and diesel fuel and included a leak-detection system. Harbor General Store, Inc., sold gasoline and diesel fuel to the general public. On April 29, 2001, State Auto issued an insurance policy to Harbor General Store, Inc., and Joplin, which was renewed annually through April 29, 2005. The insurance policy contained an exclusion for pollution-related damage.

On October 15, 2004, the Arkansas Department of Environmental Quality ("ADEQ") performed a routine inspection of the Harbor General Store service station and discovered leaks from its fuel-dispensing system. As a result, ADEQ contracted with a third party to perform soil and ground water testing in the vicinity of the Harbor General Store. The test wells that were drilled indicated that there had been soil and ground water pollution caused from the service station's fuel-dispensing system. Those tests showed the presence of benzene, toulene, ethyl benzene,

xylene, and methyl tertiary butyl ether. ADEQ contracted with third parties for the remediation of the polluted soil and groundwater.

On April 19, 2005, the Burch Trust filed a complaint in the Montgomery County Circuit Court against various defendants, including Harbor General Store, Inc., and Joplin. In that action, the Burch Trust claimed that it owned property across the street from the Harbor General Store that was contaminated by pollution migrating from the store's fuel-dispensing system. The matter went to trial, and the jury returned a verdict in favor of the Burch Trust and against Harbor General Store, Inc., and Joplin in the amount of $750,000.

On January 13, 2006, State Auto filed a complaint for declaratory judgment against ADEQ, the Burch Trust, Harbor General Store, Inc., Joplin, and other parties having an interest in the matter. In that complaint, State Auto maintained that genuine issues relating to the extent of State Auto's liability and responsibility for the remediation of damaged property under its insurance policies had been raised in the Montgomery County Circuit Court pollution litigation. Accordingly, State Auto requested a declaration of rights regarding its liability for the jury award in favor of Burch Trust.

All of the defendants answered State Auto's declaratory-judgment complaint, and Burch Trust filed a counterclaim against State Auto for the amount of the judgment awarded to it against Harbor General Store, Inc., and Joplin, which was $750,000. Subsequently, Burch Trust moved for summary judgment against State Auto in which it demanded payment of the $750,000 judgment under the insurance policy.

State Auto filed a response and attached to that response were the following nine exhibits:

1. Limited Site Assessment Report for Harbor General Store.

2. Additional Site Assessment Report for Harbor General Store.

3. Evidence of bankruptcy proceedings of Harbor General Store, Inc., and Joplin development.

4. Complaint filed by Burch Trust in April of 2005.

5. Remediation cost estimate for properties impacted by contamination from Harbor General Store.

6. Judgment upon jury verdict in favor of Burch Trust.

7. Commercial general liability policy and umbrella policy.

8 & 9. Government mandated Material Data Safety Sheets.

State Auto then filed its own motion for summary judgment, and the Burch Trust responded.

State Auto next filed a reply to the Burch Trust's response to its motion for summary judgment and attached an affidavit of Steve Standridge, who was an authorized agent for State Auto who sold the insurance policy to Harbor General Store, Inc. In his affidavit, Standridge stated that Glen Mayle, president of Harbor General Store, Inc., rejected the offer of a pollution coverage policy with a $1,000,000 limit that was written by another carrier. According to Standridge, Mr. Mayle rejected that policy because he had new underground tanks that probably would not leak and because Harbor General Store, Inc., was paying a premium to the State Pollution Control Fund and would not need the coverage. The Burch Trust responded and attached the deposition testimony of Glen Mayle.

On October 30, 2006, the Pulaski County Circuit Court entered an order granting the Burch Trust's motion for summary judgment and denying State Auto's motion for summary judgment. The court added that it was bound by Arkansas law to resolve all doubts in favor of the insured when interpreting exclusions in insurance policies. According to the court, both Arkansas appellate courts have addressed this same definition of "pollutant" that is contained in State Auto's policy exclusion. The court then cited *Minerva Enterprises, Inc. v. Bituminous Casualty Corp.*, 312 Ark. 128, 851 S.W.2d 403 (1993), and *Anderson Gas & Propane, Inc. v. Westport Insurance Corp.*, 84 Ark. App. 310, 140 S.W.3d 504 (2004), as the decisions by the two courts.

The circuit court concluded in its order that the holdings by Arkansas's appellate courts have been to the effect that the definition of "pollutant" is ambiguous as a matter of law. The circuit court further found that the judgment the Burch Trust seeks to have satisfied under the State Auto insurance policy was for damages from an accidental release of gasoline at a retail service

station, which is not excluded under the policy, rather than for damages from persistent industrial pollution, which is excluded. The court ruled that there were no genuine issues of material fact and held that the policy must be interpreted in favor of the insureds, Joplin and Harbor General Store, Inc., which was in favor of coverage.

The Pulaski County Circuit Court subsequently entered a final judgment on November 7, 2006, in which it referred to its October 30, 2006 order regarding the parties' motions for summary judgment and then awarded a twelve percent penalty and attorney's fees in favor of the Burch Trust pursuant to Arkansas Code Annotated § 23-79-208 (Repl. 2004). As a final point, the court dismissed State Auto's complaint for a declaratory judgment and noted that the order constituted a final judgment on the counterclaim in favor of the Burch Trust and against State Auto in the amount of $915,699.47.

## I. Overruling Minerva

State Auto first contends on appeal that this court's decision in *Minerva Enterprises, Inc. v. Bituminous Casualty Corp.*, *supra*, and the court of appeals's decision in *Anderson Gas & Propane, Inc. v. Westport Insurance Corp.*, *supra*, were wrongly decided. We disagree.

In support of its argument, State Auto points to the pertinent provisions in its insurance contracts. The State Auto liability policy first provides the following pollution exclusion under Section I, which covers bodily injury and property liability damage:

2. Exclusions

This insurance does not apply to:

. . . .

f. Pollution

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured . . . .

The policy next defines "pollutants" as follows:

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

State Auto points out that both *Minerva* and *Anderson* stand for the proposition that any ambiguity inherent in the pollution-exclusion clause must be resolved on remand by the fact-finder. According to State Auto, the *Minerva* and *Anderson* decisions should be overturned for three reasons. It argues, initially, that this court ignored the fundamental principle of insurance-policy construction, which is to give effect to the plain policy language and avoid a construction that neutralizes provisions of the policy. State Auto points out that "pollutants" are defined under the policy as "any . . . irritant or contaminant." Gasoline, it maintains, clearly falls within that definition.

The second error State Auto asserts is that in *Minerva*, this court speculated about the *intent* of the drafters of the insurance policy. State Auto offers that this error lies at the heart of the *Minerva* opinion. State Auto specifically refers to this court's reliance on *Molton, Allen & Williams, Inc. v. St. Paul Fire & Marine Insurance Co.*, 347 So. 2d 95 (Ala. 1977), which it says this court believed was followed by a majority of courts at the time it handed down its decision in *Minerva*. The most obvious defect in *Molton*, according to State Auto, is that the *Molton* court ignored the plain language of the exclusion. Further, State Auto points to what it considers to be a defect in both *Molton* and *Minerva*, which is that both courts concluded that the listed examples of pollutants in the exclusion are all "related to industrial waste." *Minerva*, 312 Ark. at 134, 851 S.W.2d at 406.

The third way in which State Auto asserts that the *Minerva* court erred is in its misapplication of the legal rule of *ejusdem generis*. According to State Auto, in the exclusion, the words "any . . . irritant or contaminant," *precede* the more specific words "smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste." State Auto claims that this is the reverse of the basis for applying the *ejusdem generis* rule and that generally, when applying that rule, the catch-all words follow the more specific examples.

State Auto further maintains that the *Anderson* decision of the Arkansas Court of Appeals compounded the errors of the *Minerva* opinion. According to State Auto, the *Anderson* court conjured up

an ambiguity that did not exist when it held that the policy failed to include the term "gasoline." State Auto contends that the court of appeals further erred by imagining a second ambiguity, when it asserted that "the terms 'irritant' or 'contaminant' can reasonably be construed as including 'gasoline' or not including it." 84 Ark. App. at 318, 140 S.W.3d at 508-09.[1]

This court has long held that there is a strong presumption in favor of the validity of prior decisions. *See, e.g., Cochran v. Bentley*, 369 Ark. 159, 251 S.W.3d 253 (2007). In *Cochran*, we said,

> [I]t is necessary, as a matter of public policy, to uphold prior decisions unless great injury or injustice would result. The policy behind *stare decisis* is to lend predictability and stability to the law. In matters of practice, adherence by a court to its own decisions is necessary and proper for the regularity and uniformity of practice, and that litigants may know with certainty the rules by which they must be governed in the conducting of their cases. Precedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable.

*Id.* at 174, 251 S.W.3d at 265 (internal citations omitted).

In *Minerva*, this court was called on to interpret a pollution-exclusion provision similar to the one in the instant case. In that case, a mobile home park's septic system backed up in a tenant's home. The *Minerva* policy defined pollutants as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed." *Minerva*, 312 Ark. at 130, 851 S.W.2d at 404. One of the arguments made by the insured in that case was that the definition of "pollutants" was intended to exclude only industrial waste, and not common household wastes. At best, the insured contended that the definition was ambiguous. This court agreed that the definition of pollutants was ambiguous and relied on what it considered to be the leading case at that time, the Alabama Supreme Court's decision in *Molton, Allen & Williams, Inc., supra*.

---

[1] The Burch Trust notes that State Auto's underwriter testified that after *Minerva* and *Anderson*, State Auto rewrote the policies it issues in Arkansas. Specifically, in 2005, State Auto amended the definition of "pollutants" contained in its Arkansas policy. The Burch Trust explains that the pollution exclusion now includes a list of the specific substances excluded, including "gasoline."

In its conclusion in *Minerva*, this court found that the pollution exclusion was ambiguous, as it was not clear that having only a single back-up septic tank in a mobile home that overflowed was necessarily the type of accident the pollution-exclusion clause was intended to exclude. This court added that under the rule of *ejusdem generis*, the term "waste" was the catch-all word which must be considered within the context of the entire list, which included pollutants related to industrial waste. This court further noted that the initial determination of the existence of an ambiguity rests with the court. Where an ambiguity exists, parol evidence is then admissible and the meaning of the ambiguous terms becomes a question of fact for the fact-finder to resolve. We remanded for the circuit court to enter a judgment consistent with our opinion.

The question now before us in the case at hand is whether this court erred in determining that the policy language in *Minerva* was ambiguous. We conclude that we did not err, despite the fact that State Auto now argues that the majority of jurisdictions hold that no ambiguity exists in a pollution exclusion containing similar language to that found in the instant case. In short, this court continues to believe that the pollution-exclusion language is subject to different interpretations.

State Auto also urges that this court incorrectly speculated about the intent of the drafters of the insurance policy. We disagree that this court speculated on the intent of the drafters in *Minerva* in determining that an ambiguity existed. In *Minerva*, this court concluded that "[t]he initial determination of the existence of an ambiguity rests with the court, and if ambiguity exists, then parol evidence is admissible and the meaning of the ambiguous terms becomes a question for the fact-finder." 312 Ark. at 134, 851 S.W.2d at 406. Once found, consideration of pertinent parol or extrinsic evidence by the fact-finder is necessary to resolve the ambiguity. The intent of the drafters is not relevant to this process. Rather, the language of the policy and how it can be read, using the canons of construction and extrinsic evidence, if necessary, is what we rely on. .

█ We hold that State Auto did not meet its burden of proving that this court should break from its rule of *stare decisis* and overrule its decision in *Minerva* or the court of appeals's decision in *Anderson*. We agree with the Burch Trust that State Auto has not shown how the result in *Minerva* is so patently wrong and unjust

that a break from precedent is unavoidable. Accordingly, we decline to overrule our decision in *Minerva* or the court of appeals's decision in *Anderson*.

## II. Minerva *Application*

For its next point, State Auto claims that even if *Minerva* and *Anderson* were correctly decided, the summary judgment granted to the Burch Trust should be reversed. We agree that it should be reversed, and we further believe that the case must be remanded to the fact-finder to consider the extrinsic evidence.

It is State Auto's position that the exhibits it attached to its motion for summary judgment and its response to the Birch Trust's motion for summary judgment removed the purported ambiguity in the policy language and decided the case in its favor under the plain language of the exclusion. According to State Auto, it is not disputed that gasoline and its constituent chemicals contaminated the Burch property. It notes that the Burch Trust specifically alleged contamination in its Montgomery County Circuit Court complaint, had evidence of that contamination introduced, and obtained a judgment stating that damage to its property was due to the release of contaminants. Thus, State Auto maintains, there was no doubt that gasoline was a contaminant in this case. State Auto concludes, as a result, that the evidence presented here should mandate a different result in its favor, and the judgment below should be overturned. It contends, in addition, that a majority of jurisdictions now hold that gasoline falls within a pollution-exclusion clause that is "absolute" and cites this court to a recent case, *Federated Mutual Insurance Co. v. Abston Petroleum, Inc.*, 967 So. 2d 705 (Ala. 2007).[2]

The Burch Trust responds by contending that the circuit court has already decided that the pollution exclusion applies only to persistent industrial pollution, thereby leaving no fact issues for a fact-finder to resolve. According to the Burch Trust, the circuit court correctly granted summary judgment in its favor. Moreover,

---

[2] In *Federated Mutual*, the Alabama Supreme Court distinguished its *Molton* decision on the basis that the pollution exclusion in *Molton* was qualified by the language "but this exclusion does not apply if such discharge, dispersal, release or escape is sudden or accidental." The language in the *Federated Mutual* pollution-exclusion clause was absolute and without qualification and is similar to the language in the case before us. The Alabama Supreme Court held that an absolute pollution-exclusion clause included gasoline.

the Burch Trust maintains that State Auto misapprehends the law of *Minerva* and *Anderson*. It argues that in both cases, this court remanded the matters for a decision of whether the insured had engaged in persistent industrial pollution. The Burch Trust claims that State Auto's argument that it has somehow removed any ambiguity through the affidavit of its insurance agent, the Material Data Safety Sheets for gasoline and its constituents, and a Limited Site Assessment Report is simply not the case. The Burch Trust contends that the circuit court found that the pollution-exclusion provision applies only to persistent industrial pollution, and this case does not involve persistent industrial pollution. As a final point, the Burch Trust urges that the parol or extrinsic evidence submitted by State Auto was not relevant.

We disagree, however, with the circuit court's application of *Minerva* to the instant case. Typically, in reviewing a grant of summary judgment, where interpretation of an insurance policy is involved, any ambiguities in the policy are construed liberally in favor of the insured. *See, e.g., First United, Inc. v. Chicago Title Ins. Co.*, 366 Ark. 508, 237 S.W.3d 15 (2006). However, we have also noted an exception to this general rule where disputed extrinsic evidence is offered to establish what the ambiguous language means. *See Gammill v. Provident Life & Accident Ins. Co.*, 346 Ark. 161, 55 S.W.3d 763 (2001); *Smith v. Prudential Prop. & Cas. Ins. Co.*, 340 Ark. 335, 10 S.W.3d 846 (2000). In *Smith*, we quoted a previous opinion of this court as follows:

> An insurance policy is to be construed strictly against the insurer, who chooses its language. The construction and legal effect of written contracts are matters to be determined by the court, not by the jury, *except* when the meaning of the language depends upon disputed extrinsic evidence. (Emphasis added.)

340 Ark. at 340, 10 S.W.3d at 850 (quoting *Southall v. Farm Bureau Mut. Ins. Co.*, 276 Ark. 58, 60, 632 S.W.2d 420, 421 (1982)).

A correct application of *Minerva* would start with a determination of whether the language in the contract was ambiguous, which the circuit court did. An ambiguity was found, because this case involves the same language that was deemed ambiguous by the *Minerva* court. It is going to the next step where the circuit court encountered a problem. It is true that in *Minerva* this court applied *ejusdem generis*. No extrinsic evidence, however, was apparently submitted by the insurance company to resolve the

ambiguity in that case prior to the appeal. In the instant case, on the other hand, extrinsic evidence was submitted by State Auto in favor of its interpretation that gasoline was excluded by the pollution-exclusion clause. While *ejusdem generis* is an important canon of construction, we hold that the fact-finder must consider the extrinsic evidence submitted by State Auto to resolve the ambiguity. This was not done.

Accordingly, we reverse the order of summary judgment and remand to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

CORBIN, J., concurs in part and dissents in part.

D ONALD L. CORBIN, Justice, concurring in part and dissenting in part. While I agree with the majority opinion reversing the instant case, I respectfully dissent with regard to the majority's failure to overrule *Minerva Enterprises, Inc. v. Bituminous Casualty Corp.*, 312 Ark. 128, 851 S.W.2d 403 (1993), and its decision to apply it to the present case. Just as I did fourteen years ago, I feel that *Minerva* was wrongly decided because the *Minerva* policy, which is virtually identical to the State Farm policy here, did not contain ambiguous language. I hold true to my analysis in *Minerva* that "[a]ny reasonable and common sense interpretation of the word 'sewage' would classify sewage as a 'contaminant.' " *Id.* at 137, 851 S.W.2d at 407. Similarly, any reasonable and common sense interpretation of the word "gasoline" would classify gasoline as an "irritant" or "contaminant." Since gasoline qualifies as an irritant or contaminant, any property damage arising from the actual discharge or seepage of gasoline is excluded under the terms of the policy.

The trial court erred in granting summary judgment in favor of Appellees and the judgment should be reversed. For this reason, I dissent.