637 So.2d 960 (1994)
George BELL and Audrey Bell, Appellants,
v.
R.D.I. RESORT SERVICES CORPORATION, and Tropical Sands Resort Condominium Owners Association, Inc., Appellees.
No. 93-01730.
District Court of Appeal of Florida, Second District.
June 3, 1994.
Carl H. Winslow, Jr. of Carl H. Winslow, Jr., P.A., Fort Myers, for appellants.
Jonathan D. Conant of Goldberg, Goldstein & Buckley, P.A., Fort Myers, for appellee R.D.I. Resort Services Corp.
CAMPBELL, Judge.
Appellants, George and Audrey Bell, filed their action below seeking damages for the alleged breach of their contract of purchase of a time-share condominium unit. Appellee, R.D.I. Resort Services Corporation, was sued by the Bells as the managing entity of Tropical Sands Resort. Summary judgment was granted in favor of R.D.I. We reverse.
The contract, entered into in 1988, provided that "[i]n addition to your deeded vacation *961 time here at Tropical Sands Resort, you are also entitled to a yearly bonus week giving you more time at our resort... ." The bonus week was "subject to availability," a term that was not defined.
In their complaints, appellants alleged that they were verbally told that "subject to availability" meant that the time-share operators would not be responsible for natural disasters, such as fires, floods or hurricanes. They also alleged that they were told that the time-share plan required that fifteen percent of the units were to be retained in order to ensure availability of the bonus week. Finally, they allege they were told that there would be no public access or rentals. Based on this understanding, appellants purchased one time-share unit week, which would entitle them also to the promised bonus week.
Appellants further alleged that in 1988, 1989 and 1990, the developer and R.D.I. honored the contract. However, in 1991, R.D.I. refused to honor appellants' request for their bonus week. Appellants alleged that, contrary to the time-share plan, which they allege called for a fifteen percent retainage of units, all units had been sold. In addition, R.D.I. operated a rental program, also contrary to appellants' understanding of the purchase agreement. Finally, R.D.I. redefined the bonus week plan virtually out of existence by basing it on a pool of: (1) Unsold units (all have been sold); (2) units unreserved; or (3) units for which the maintenance fees had become past due.
In response, R.D.I. argued that it made no representations to appellants at the time of purchase and that any representations were made by representatives of Tex La Miss Corporation, the original developer. R.D.I. was retained to manage the time-share development by Coast Bank, which had taken over the resort from Tex La Miss, the original developer, and by Tropical Sands Resort Condominium Association, Inc. (Tropical Sands). R.D.I. argues that neither it nor Tropical Sands have any affiliation with the original developer, Tex La Miss. As such, R.D.I. argued it only had knowledge of those rules, regulations, restrictions and representations that were matters of record.
R.D.I. essentially argued that because any representations were allegedly made to appellants by the developer, who is no longer in business or associated with Tropical Sands, R.D.I., as the managing entity, has no liability to appellants. We disagree. It is clear to us that the intent of the legislature in enacting chapter 721, Florida Statutes (1987), entitled, "Real Estate Time-Share Plans," was to establish procedures to regulate the entire operation of time-share plans and to protect purchasers against any person or participant in the operation of time-share plans. See Smith v. Dep't of Business Regulation, 504 So.2d 1285, 1289 (Fla. 1st DCA 1986), rev. denied, 513 So.2d 1063 (Fla. 1987). Those particular sections of chapter 721, Florida Statutes (1987), which make this intent clear are as follows:
721.05 Definitions. 
....
(17) "Managing entity" means the person responsible for operating and maintaining the time-share plan.
....
721.11 Advertising Materials; oral statements. 
....
(4) No advertising or oral statement made by any seller shall:
....
(g) Misrepresent the amount or period of time during which the accommodations or facilities will be available to any purchaser.
....
(m) Imply that a facility is available for the exclusive use of purchasers if the facility will actually be shared by others or by the general public.
....
721.13 Management. 
(1) Before the first sale of a time-share period, the developer shall create or provide for a managing entity which may be the developer, a separate management firm, or an owners' association, or some combination thereof.
(2) The managing entity shall act in the capacity of a fiduciary to the purchasers of the time-share plan.

*962 (3) The duties of the managing entity include, but are not limited to:
(a) Management and maintenance of all accommodations and facilities constituting the time-share plan.
....
(g) Scheduling occupancy of the time-share units, when purchasers are not entitled to use specific time-share periods, so that all purchasers will be provided the use and possession of the accommodations and facilities of the time-share plan which they have purchased.
(h) Performing any other functions and duties which are necessary and proper to maintain the accommodations or facilities as provided in the contract and as advertised.
....
721.17 Transfer of interest.  Except in the case of a time-share plan subject to the provisions of chapter 718 or chapter 719, no developer or owner of the underlying fee shall sell, lease, assign, mortgage, or otherwise transfer his interest in the accommodations or facilities of the time-share plan except by an instrument evidencing the transfer recorded in the public records of the county in which the accommodations or facilities are located. The instrument shall be executed by both the transferor and transferee and shall state:
(1) That its provisions are intended to protect the rights of all purchasers of the plan.
(2) That its terms may be enforced by any prior or subsequent time-share purchaser so long as that purchaser is not in default of his obligations.
(3) That the transferee will fully honor the rights of the purchasers to occupy and use the accommodations and facilities as provided in their original contracts and the time-share instruments.
(4) That the transferee will fully honor all rights of time-share purchasers to cancel their contracts and receive appropriate refunds.
(5) That the obligations of the transferee under such instrument will continue to exist despite any cancellation or rejection of the contracts between the developer and purchaser arising out of bankruptcy proceedings.
Should any transfer of the interest of the developer or owner of the underlying fee occur in a manner which is not in compliance with this section, the terms set forth in this section shall be presumed to be a part of the transfer and shall be deemed to be included in the instrument of transfer... .
....
721.21 Purchasers' remedies.  An action for damages or for injunctive or declaratory relief for a violation of this chapter may be brought by any purchaser or association of purchasers against the developer, a seller, an escrow agent, or the managing entity. The prevailing party in any such action, or in any action in which the purchaser claims a right of voidability based upon either a closing before the expiration of the cancellation period or an amendment which materially alters or modifies the offering in a manner adverse to the purchaser, may be entitled to reasonable attorney's fees. Relief under this section does not exclude other remedies provided by law.
In view of what we perceive to be the legislature's intent to protect purchasers of time-share units from all third party participants in the operation of those units, we conclude that appellants have alleged actions for which appellee could be liable and that genuine factual disputes exist that preclude summary judgment. We, therefore, reverse the summary judgment entered for appellant R.D.I. and remand for further proceedings.
RYDER, A.C.J., and FULMER, J., concur.