NATIONAL ENTERPRISES, INC., and Arkansas No. 1, LLC *v.* LAKE HAMILTON RESORT, INC.

02-1192                                             142 S.W.3d 608

Supreme Court of Arkansas
Opinion delivered January 22, 2004

[Petition for rehearing denied February 26, 2004.]

---

*Williams & Anderson LLP*, by: *Peter G. Kumpe* and *Stephen B. Niswanger*, for appellants.

*Randy Coleman, P.A.*, by: *Randy Coleman* and *Courtney McLarty*, for appellee.

R OBERT L. BROWN, Justice. Appellants National Enterprises, Inc., and Arkansas No. 1, LLC (National Enterprises), appeal from three trial court orders: (1) an August 30, 1994 order dissolving a preliminary injunction against appellee Lake Hamilton Resort, Inc. (LHR), and declaring that National Enterprises had no right to use LHR's property for amenities, parking, and

utilities;[1] (2) a March 4, 2002 protective order limiting discovery to National Enterprises' right of ingress and egress over LHR's property; and (3) a July 31, 2002 order delimiting the easement by necessity over LHR's property. National Enterprises asserts six points on appeal: (1) that the trial court erred in enjoining it from access to utilities and the use of parking spaces and amenities on LHR's property, as the License Agreement between the two properties did not apply to utilities and the deeds in National Enterprises' chain of title conveyed rights to utilities, amenities, and parking as appurtenances; (2) that the trial court erred in refusing to permit National Enterprises' use of an easement by necessity for any purposes other than ingress and egress; (3) that the trial court erred in determining that the License Agreement between predecessors in title was a mere license that was revocable at will; (4) that the trial court erred in enjoining National Enterprises from having access to utilities, parking, and amenities located on LHR's property, as the court failed to properly and fairly balance the equities of the parties; (5) that the trial court erred in refusing to reconsider the 1994 injunction entered against National Enterprises and in entering a protective order limiting discovery; and (6) that the trial court erred in finding that the August 30, 1994 order was a final order for purposes of *res judicata*, collateral estoppel, and appeal.

LHR has filed a motion to dismiss National Enterprises' appeal and urges that dismissal is appropriate due to National Enterprises' failure to perfect a prior appeal of the 1994 order. We agree that National Enterprises' current appeal of the 1994 order should be dismissed. With respect to the protective order and order delimiting the easement, we affirm the circuit court.

The facts, as set forth in the pleadings, are these. On June 10, 1994, National Enterprises, as owner of time-share condominiums located on Lake Hamilton adjacent to LHR's property, sued LHR. National Enterprises alleged that LHR had "maliciously threatened to and has now obtained a permit to erect . . . a wooden privacy fence . . . around three sides of [National Enterprises'] property[.]" National Enterprises further stated that the fence served no useful purpose and injured National Enterprises in the

---

[1] The August 30, 1994 order was issued by the Garland County Chancery Court. However, pursuant to Amendment 80 of the Arkansas Constitution, which was effective on July 1, 2001, the courts of law and equity were merged, and the matter continued in circuit court.

use of its property and the operation of its business. It sought a preliminary injunction against LHR, directing it to cease and desist from building the fence.

Subsequently, National Enterprises filed several amended and substituted complaints in which it asserted a deprivation of light and air on three sides of the condominiums. Later, on June 23, 1994, it requested a preliminary injunction against LHR from building the privacy fence and an order directing LHR to provide it ingress and egress over LHR's property as well as access to utilities and parking. That same day, the court granted National Enterprises' complaint for a preliminary injunction. The court's order said in part:

> 2. Defendant Lake Hamilton Resort, Inc. [LHR], its agents, servants, and employees are enjoined from erecting a fence around Plaintiff's property located at 3501 Albert Pike Road, City of Hot Springs, County of Garland.

> 3. Plaintiff [National Enterprises] is allowed to restore the utilities (excluding telephone) to their previous status at the afore-mentioned property at Plaintiff's expense. Plaintiff shall comply with all local codes and ordinances. Plaintiff shall pay any and all expenses for the restoration and reimburse Defendant for any expenses incurred by Defendant in this connection.

> 4. Defendant Lake Hamilton Resort, Inc., its agents, servants, and employees are ordered to allow the Plaintiff and the time-share owners to park in the parking area adjacent to the aforementioned property.

National Enterprises then filed its final amended complaint. Eight days later, the circuit court held a hearing on the preliminary injunction. On August 5, 1994, the court issued a letter opinion in which it concluded that when Painter's Point, the original developer of LHR's property, conveyed the condominiums, which are now National Enterprises' property, to Lakeshore Resort and Yacht Club, one of the National Enterprises' predecessors, by warranty deed, that warranty deed did not contain any reservation of rights or grants of easement over LHR's property. The court further concluded that many of the rights now being sought by National Enterprises were more properly addressed in the earlier foreclosure action of LHR's property brought by Union Planters Bank and finalized by a foreclosure decree on August 3, 1990. The

circuit court also found that there was no implied easement by necessity over LHR's property regarding the parking lot or LHR's amenities. Nor did the court find that a prescriptive easement was appropriate. It based this finding on the absence of a hostile or notorious usage.

The court, however, did reserve ruling on the nature and extent of National Enterprises' right of ingress and egress. The circuit court memorialized its letter opinion in an order dated August 30, 1994 (1994 order), in which the court said in part:

> 3. By letter opinion dated August 5, 1994, which letter opinion is attached and incorporated by reference herein, the Court considered whether to continue or dissolve the Preliminary Injunction and found that the Preliminary Injunction entered by this Court on June 23, 1994 should be dissolved; provided however, that an easement by way of necessity should be established for the limited purpose of permitting the Plaintiff to have ingress and egress to its property. Accordingly, Plaintiff shall have no use of Defendant's property for parking, access to utilities, use of the hotel amenities or for any purpose other than for access to Plaintiff's property. Because sufficient evidence has not been presented concerning the nature, location and extent of the Plaintiff's right of ingress and egress, and in recognition of the Defendant's right to limit the location of the easement and to delimit the easement, the Court reserves ruling on the nature, location and extent of the access right-of-way until such time as sufficient evidence is introduced on that issue.

> . . . .

> 5. The certain License Agreement and the certain Memorandum of Agreement between Painter's Point Limited Partnership and Lakeshore Resort and Yacht Club do nothing more than create a license without any estate or interest in the lands of Defendant's predecessor in title, Painter's Point. Plaintiff's attempts to establish broad rights under the Memorandum of Agreement and underlying License Agreement have been foreclosed by the August 3, 1990 decree.

> 6. The preliminary injunction is hereby dissolved, and the subsequent order entered by this court is vacated. No permanent injunction is granted.

7. When the [ ] of title was severed and the condominium property was conveyed to Lakeshore, the deed memorializing this transfer was silent as to any reservations or grants of an easement; instead, the parties entered into a license agreement. As a result, there is no implied easement between Defendant's property and Plaintiff's property allowing Plaintiff to have use of the parking lot as well as use of the recreational amenities of the hotel or use of 20 parking spaces for condominium owners.

8. Plaintiff's assertion that, in the alternative, a prescriptive easement exists is not applicable to the facts of this case because Plaintiff's use of Defendant's property was consensual; there was no open, notorious or hostile use of the property as required to establish a prescriptive right under the common law.

On September 27, 1994, National Enterprises filed its notice of appeal. In that notice of appeal, National Enterprises stated that it was appealing from the court's "final Order" of August 30, 1994. National Enterprises further described the issues it was appealing:

The case involves the effect on deeds, easements and irrevocable licenses when title to property is severed and the effect of foreclosure proceedings as they relate to such deeds, easements and irrevocable licenses. Further, this appeal involves issues of significant public interest involving property interests in land which have not been fully or clearly decided in Arkansas, and thus the case (if it went to the Court of Appeals) would have to be certified by that Court to the Supreme Court. Two such issues are the right to park a vehicle upon entering the premises under an implied easement of ingress and egress (which easement has been recognized by the Chancellor), and the legal effect of an irrevocable license (which the Chancellor refused to recognize although constructive notice of it was available through a document contained in the chain of title).

National Enterprises did not state it was appealing from the dissolution of the preliminary injunction.

On March 31, 1995, National Enterprises tendered the record of the chancery court proceedings to the Supreme Court Clerk, but because the record was untimely, it was rejected by the Clerk. National Enterprises filed a motion for rule on clerk to accept the record, and this court denied the motion.

On June 12, 2000, National Enterprises moved the chancery court to delimit the easement. In that motion, National Enterprises asserted that the court had continuing jurisdiction over the enforcement of its 1994 order. It asserted that the court should order that the easement by necessity include access to water and sewer service to the condominium property and that equitable principles required that the condominium property have utility and parking access.

On February 15, 2002, LHR filed a motion for protective order relating to discovery. The motion noted that the matter was set for trial on April 15, 2002, and sought to limit National Enterprises' discovery to the right of ingress and egress across LHR's property and exclude matters concerning parking, access to utilities, and use of hotel amenities. The trial court, which became the circuit court due to the adoption of Amendment 80 to the Arkansas Constitution, effective July 1, 2001, entered a protective order, limiting discovery as LHR had requested.

On April 15, 2002, the circuit court held a hearing on the motion to delimit, at the close of which it said:

> . . . [L]ooking at the Court's Order which was entered on August 30th, 1994, I believe Paragraph 3 is very clear, and for this reason. First of all I will state for the record this was a final Order. Further, that the Court intended that the Motion to Delimit would certainly not be granted or it would be an absolute, uh, derogation and conflict with Paragraph 3 of this Order. We have heard testimony concerning an easement for ingress and egress, and the Court finds that that is exactly what the Court, in this '94 Order, intended to hear evidence as to what would be an appropriate [sic] to enter and exit this property. . . . [T]he Court rules that defendant's exhibit . . . 1 . . . shall be the easement to allow ingress and egress[.]

The circuit court then entered an order in which the court made the following findings:

> 2. By final Order dated August 30, 1994, the Court determined Plaintiff National Enterprises, Inc. was entitled to an easement by way of necessity over Defendant's property for the limited purpose of permitting National Enterprises, Inc. to have ingress and egress to its property.

3. The easement shall be and hereby is delimited as described on that certain survey of Larry W. Smith, revised and dated as of May 3, 2002 which is attached hereto and incorporated herein and specifically made a part of this Order. Plaintiff's Motion to Delimit Easement is denied in all other respects.

## I. Motion to Dismiss Appeal

LHR has now moved to dismiss National Enterprises' appeal from the 1994 order. In that motion, it asserts that National Enterprises had previously appealed the 1994 order, which was docketed in this court under No. 95-372 and styled as *National Enterprises, Inc. v. Lake Hamilton Resort, Inc.* LHR claims that because National Enterprises failed to perfect its prior appeal in 1995, its present appeal of the 1994 order is barred. It further states that in the intervening time, National Enterprises has pursued other litigation inconsistent with its current posture that the 1994 order is not a final order.

National Enterprises counters that the motion to dismiss is not well-taken for a variety of reasons. First, it asserts that LHR's motion advocates dismissal on grounds going to the merits of the appeal and not based on procedural or jurisdictional defects. It further contends that LHR's motion does not address matters concerning the 2002 protective order or the 2002 delimiting order, which it also appeals. Accordingly, it claims that its appeal of those two orders is still viable. National Enterprises further claims that LHR's motion is untimely as it was not filed until after the record in the current appeal was lodged and briefing begun. Finally, it asserts that the 1994 order was not final, as the court reserved the matter of delimitation for future determination.

■ LHR's motion has merit. The 1994 order was without question an appealable order, as defined by this court's rules. Arkansas Rules of Appellate Procedure, in effect at the time of the entry of the order, provided in part:

(a) An appeal may be taken from a circuit, chancery, or probate court to the Arkansas Supreme Court from:

. . . .

6. An interlocutory order by which an injunction is granted, continued, modified, refused, or dissolved, or by which an application to dissolve or modify an injunction is refused[.]

Ark. R. App. P. 2(a)(6) (1994). The chancery court's 1994 order dissolved the preliminary injunction entered against LHR and refused National Enterprises' request for a permanent injunction, and, thus, the order fell easily within the ambit of Rule 2(a)(6).

■ But even more to the point, National Enterprises has taken inconsistent positions with respect to the chancery court's 1994 order. In its first notice of appeal in 1994, National Enterprises referred to the 1994 order as a "final Order" and stated that it was appealing issues relating to the deeds, easements, and the License Agreement and specifically mentioned ingress and egress and parking. Because National Enterprises failed to perfect its appeal in a timely fashion by tendering the record too late, it failed to appeal the 1994 order. Because the order was not appealed, it became a final order and became binding on all the parties. *See, e.g., Millers Cas. Ins. Co. v. Fauria*, 279 Ark. 291, 651 S.W.2d 80 (1983) (holding that court of appeals was without jurisdiction to modify judgment against insurer, because judgment against insurer became final when it failed to appeal).

In addition to its notice of appeal, on May 23, 1996, National Enterprises filed an amended complaint in the Pulaski County Circuit Court against its former legal counsel, Robert Wilson, and his firm, Wilson and Associates, P.A., for legal malpractice in connection with the untimely appeal. In that amended complaint, it alleged:

12. The Defendants [legal counsel], however, failed to lodge the appellate record in a timely manner as required by the Arkansas Rules of Appellate Procedure and as a result, *NEI not only lost its right to appeal the Order, but also lost its standing to overturn the foreclosure decree relating to the title of the Adjoining Property.* (Emphasis added.)

Hence, National Enterprises manifestly took the position in its legal-malpractice suit against its former counsel that the court's 1994 order was final and appealable. Yet, seven years later in its response to LHR's motion to dismiss, National Enterprises characterizes the 1994 order as "interlocutory" and "non-final."

■ We recently explored the doctrine of inconsistent positions as well as judicial estoppel in the case of *Dupwe v. Wallace*, 355 Ark. 521, 140 S.W.3d 464 (2004). In *Dupwe*, we cited longstanding authority to the effect that this court would not permit a party litigant "to avail himself of inconsistent positions in a litigation concerning the same subject matter" nor "play fast and loose with the court." *Dupwe v. Wallace, supra* (quoting *Cox v. Harris*, 64 Ark. 213, 41 S.W. 426 (1897); *Benton v. State*, 78 Ark. 284, 94 S.W. 688 (1906)). *See also International Harvester v. Burks Motors*, 252 Ark. 816, 481 S.W.2d 351 (1972); *Tennessee v. Barton*, 210 Ark. 816, 198 S.W.2d 512 (1946); *Rudolph v. Kelly*, 144 Ark. 296, 222 S.W. 42 (1920). We conclude that National Enterprises has clearly taken an inconsistent position with regard to the finality of the 1994 order as evidenced by its 1995 notice of appeal and its legal-malpractice suit against former legal counsel, when compared to its current posture that the 1994 order was not final.

■ Moreover, it appears that National Enterprises has run afoul of the doctrine of judicial estoppel which we held was "merely a continuation of existing law previously set out under the doctrine against inconsistent positions[.]" *Dupwe v. Wallace, supra.* In *Dupwe*, we set out the necessary elements that must exist for a *prima facie* case of judicial estoppel:

> 1. A party must assume a position clearly inconsistent with a position taken in an earlier case, or with a position taken in the same case;
>
> 2. A party must assume the inconsistent position with the intent to manipulate the judicial process to gain an unfair advantage;
>
> 3. A party must have successfully maintained the position in an earlier proceeding such that the court relied upon the position taken; and
>
> 4. The integrity of the judicial process of at least one court must be impaired or injured by the inconsistent positions taken.

*Dupwe*, 355 Ark. at 525, 140 S.W.3d at 467. We conclude that the four elements for judicial estoppel have been met, when we compare the 1994 notice of appeal with National Enterprises' current posture.

Both LHR and National Enterprises were parties in 1994 as they are today. We give little credence to National Enterprises' contention that it is not bound by its 1994 notice of appeal because its former attorney drafted it.

If we were to allow the current appeal of the 1994 order, we would be permitting National Enterprises a second chance to appeal an order which it negligently failed to do at its first opportunity. National Enterprises clearly attempted to appeal a final order by stating so in its notice of appeal and by tendering a record to the Clerk. Where there has been an attempt to appeal, and due to an appellant's failure to properly docket the appeal, the attempt fails, we conclude that the trial court's order on that matter is final and not subject to a later review on appeal. *See Simmons v. Estate of Wilkinson*, 318 Ark. 371, 885 S.W.2d 673 (1994) (a party will not be allowed to appeal indirectly a second time after first appeal is dismissed due to untimeliness).

For the foregoing reasons, we conclude that the 1994 order became a final order for failure to appeal. We will not allow National Enterprises to appeal indirectly for a second time a matter that has become final. We, therefore, grant the motion to dismiss as it pertains to the 1994 order.

## II. Delimiting Order and Protective Order

Irrespective of the fact that the current appeal of the 1994 order should be dismissed, an appeal from the two remaining 2002 orders is still viable.

The order delimiting the easement, based on a survey, was entered in 2002, eight years after the easement by necessity for ingress and egress was declared over LHR's property in the 1994 order. The 2002 order was collateral to the 1994 order and merely fixed the boundaries to the court-found easement by means of an engineer's survey. National Enterprises does not contest the delimiting order itself. Accordingly, this court will not permit the delimiting order to be used as a vehicle for bootstrapping issues for appeal that have previously been decided by a final order in 1994.

National Enterprises also maintains that their condominiums have become dilapidated, uninhabitable, and valueless since 1994 and that this warrants a reexamination of the issues relating to amenities, utilities, and parking. Hence, it contends that discovery

into these matters should not be curtailed. The circuit court disagreed and entered a protective order in 2002 limiting discovery to matters pertaining to the easement for ingress and egress. We disagree that the protective order should be set aside.

██ We have said that a circuit court has wide discretion in matters of discovery, and we will not reverse a decision absent an abuse of discretion. *See, e.g., Parker v. Southern Farm Bureau Cas. Ins. Co.*, 326 Ark. 1073, 935 S.W.2d 556 (1996). As already stated in this opinion, the 1994 order became final when National Enterprises failed to mount a timely appeal. This meant, of course, that the court's conclusions regarding rights to parking, use of amenities, and utilities on LHR's property were final and binding on National Enterprises. For that reason, the circuit court under-standably concluded that there was no need for discovery on matters which had already been decided. The circuit court did not abuse its discretion in granting the protective order against the appellants.

Motion to dismiss the appeal with respect to the 1994 order is granted.

Affirmed.

IMBER, J., not participating.