NATIONAL ENTERPRISES, INC. and Arkansas No. 1 LLC *v.*
Donald D. KESSLER and Mary L. Kessler, et al., on Their Own Behalf
and on Behalf of All Others Similarly Situated

04-646                                                    213 S.W.3d 597

Supreme Court of Arkansas
Substituted Opinion on Denial of Rehearing
September 15, 2005

*Farrar, Reis, Rowe, Nicolosi, Williams & Strause*, by: *Bryan J. Reis*; and *Williams & Anderson, PLC*, by: *Peter G. Kumpe* and *Stephen B. Niswanger*, for appellants.

*Bequette & Billingsley, P.A.*, by: *Jay Bequette*; and *Wood, Smith Schnipper & Clay*, by: *Don M. Schnipper*, for appellees.

R OBERT L. BROWN, Justice. This case involves a time-share development located in Hot Springs known as the Lakeshore Resort and Yacht Club. The appellants in this case are National Enterprises, Inc., and Arkansas No. 1 LLC, which are allegedly the successors-in-interest to the original developer of the Lakeshore condominiums. Hereinafter, the appellants will jointly be referred to as National Enterprises. The appellees are Donald D. Kessler and others (jointly referred to as Owners), who are the owners of the Lakeshore condominiums and who brought a class-action suit against National Enterprises. In that suit, the Owners sought restitution and rescission of their purchase contracts and raised claims of

misrepresentation and breach of contract. The circuit court certified the class and on that same date granted summary judgment in favor of the Owners and against National Enterprises on issues involving liability and damages. We affirm that grant of summary judgment in part and reverse and remand in part.

The history of this case is taken largely from the Joint Statement of Undisputed Facts (Joint Statement) filed by the parties in federal district court on October 21, 1999. That Joint Statement was attached as an exhibit to the Owners' Response to National Enterprises's Motion to Dismiss or for Summary Judgment and Counter-Motion for Summary Judgment, which was filed in circuit court on January 7, 2004.

In 1983, Painter's Point Development Company Limited Partnership mortgaged a parcel of land in Hot Springs to Union Planters National Bank to construct a hotel and condominium units on that property. Painter's Point built the hotel and condominium units, and in June 1985, conveyed the property with the condominium units to the Lakeshore Resort and Yacht Club Limited Partnership (Lakeshore Partnership).

When the Lakeshore Partnership purchased the Lakeshore condominiums from Painter's Point, they entered into a written license agreement (License Agreement) under which the Owners of the condominium units on the Lakeshore property were to have use of certain amenities in the adjoining hotel and on the hotel property. On August 26, 1986, the Lakeshore Partnership conveyed the condominium property to Hansen, Hooper & Hayes, Inc. (HHH), the general partner for Lakeshore Partnership, and, on August 27, 1986, HHH executed a $2,802,000.00 promissory note and mortgage in favor of Independence Federal Bank, FSB.

On November 18, 1988, Union Planters foreclosed on its mortgage on the hotel property and a foreclosure decree was subsequently entered in favor of Union Planters on August 3, 1990. On December 24, 1990, Robert and Shannon Fewell purchased the hotel property from Union Planters and later deeded the property to Lake Hamilton Resort, Inc., an Arkansas corporation (LHR). LHR is owned by the Fewells.

In September 1991, Independence Federal Bank went into receivership. The Resolution Trust Corporation (RTC) assumed the HHH note and mortgage given for the Lakeshore condominiums from Independence Federal Bank and later entered into an arrangement with LHR for LHR to operate the condominiums.

LHR collected the revenues, paid expenses, and split any remaining sum with the RTC. During the period of this arrangement, LHR maintained a list of time-share owners, booked time-share owners into their units, provided utilities and parking to time-share owners, and ensured that they had the benefit of hotel amenities.

On August 19, 1993, RTC, as the receiver for Independence Federal Bank, filed an action in Garland County Chancery Court to foreclose on the HHH mortgage. On October 13, 1993, National Enterprises purchased the note and mortgage from RTC and was substituted as the plaintiff in the foreclosure action on the Lakeshore condominiums. On November 1, 1993, LHR wrote to National Enterprises and offered the sum of $275,000.00 to purchase the note and mortgage. The next day, National Enterprises made a written counter-proposal and offered to sell its beneficial interest in the Lakeshore Resort and Yacht Club for $1,000,000.00. By reply letter that same day, LHR pronounced the counter-proposal "totally off-base" and terminated the management agreement. By letter dated December 3, 1993, LHR informed the condominium Owners that, effective December 10, 1993, they would no longer be considered hotel guests and that their use of hotel amenities, parking facilities adjacent to the condominiums, and utilities had ended. National Enterprises purchased the property at the subsequent foreclosure sale on May 11, 1994.

On June 10, 1994, National Enterprises sued LHR to enforce the License Agreement. On August 30, 1994, the chancellor ruled that the License Agreement executed for the benefit of the owners did not survive the foreclosure decree of the hotel property entered in favor of Union Planters.

On September 18, 1995, National Enterprises transferred one hundred percent of its right, title and interest in the Lakeshore property to Arkansas No. 1 LLC, by warranty deed. Again, for ease of reference, we will continue to refer to both appellants as National Enterprises.

On November 27, 1996, this case began when the appellees, as named representatives of the Owners filed a class-action complaint against National Enterprises and sought rescission and restitution on theories of breach of contract and misrepresentation. The class size was described as "not known" but was estimated to be not less than 300 members. The alleged common issues of the

class members arose because of their time-share interests as owners of condominium units at the Lakeshore Resort & Yacht Club.

On January 6, 1997, National Enterprises removed the case to federal district court based on diversity of jurisdiction. During the ensuing seven years while the case was in the federal court system, it was the subject of four opinions handed down by the Eighth Circuit Court of Appeals. *See Kessler v. National Enters., Inc.*, 347 F.3d 1076 (8th Cir. 2003) (*Kessler IV*); *Kessler v. National Enters., Inc.*, 238 F.3d 1006 (8th Cir. 2001) (*Kessler III*); *Kessler v. National Enters., Inc.*, 203 F.3d 1058 (8th Cir. 2000) (*Kessler II*); *Kessler v. National Enters. Inc.*, 165 F.3d 596 (8th Cir. 1999) (*Kessler I*).

In *Kessler III*, the Eighth Circuit reversed the district court's judgment in favor of National Enterprises. The district court had determined that the property interests purchased by National Enterprises at the May, 1994 foreclosure sale did not include the initial developer's obligations to provide utilities and access to hotel amenities and parking and that § 18-14-601 of the Arkansas Time-Share Act only referred to the transfer of the developer's obligation to perform certain record-keeping functions rather than to all obligations of the initial developer. *See Kessler III*. The Eighth Circuit reversed and concluded that the language of § 18-14-601 — "Any transfer of the developer's interest in the time-share program to any third person shall be subject to the obligations of the developer" — meant what it said and that it referred to all of the original developer's obligations owed to the individual time-share owners. *See id.* The Eighth Circuit noted that its interpretation of this provision was "hardly novel" and cited decisional law from other states[1] as well as the Garland County Chancery Court's earlier holding in a separate court proceeding that National Enterprises was liable for misrepresentations of the original developer under the Arkansas Time-Share Act. *See id. See also National Enters., Inc. v. Rea*, 329 Ark. 332, 947 S.W.2d 378 (1997) (affirmed for an abstract deficiency without addressing the merits).

The Eighth Circuit also held that the Arkansas Time-Share Act's statute of limitations set out in § 18-14-403 governed the case and that the Owners' claims were timely, since they were

---

[1] *See Bell v. RDI Resort Servs. Corp.*, 637 So. 2d 960 (Fla. Dist. Ct. App. 1994); *State v. Heath*, 806 S.W.2d 535 (Tenn. Ct. App. 1990); *Smith v. Dept. of Bus. Reg.*, 504 So. 2d 1285 (Fla. Dis. Ct. App. 1986).

brought within four years of the December 10, 1993 breach in the contract's requirements for the continued furnishing of services. *See id. See also* Ark. Code Ann. § 18-14-403 (1987). The Eighth Circuit finally held on the merits of the claim that the original developer misrepresented the Owners' right to continued access to hotel amenities and parking, and, on that basis, the Owners had an actionable claim for constructive fraud, entitling them to equitable relief in the form of partial rescission. The case was remanded to the district court for a calculation of damages.

In *Kessler IV*, both parties appealed the district court's calculation of total damages, which was $1,666,626.26. At that point, the Eighth Circuit considered National Enterprises's "belated jurisdictional challenge" on the ground that diversity jurisdiction was lacking because the class members' individual claims for actual damages did not meet the jurisdictional requirement and the total claims could not be aggregated to satisfy the minimum-amount-in-controversy requirement. The Eighth Circuit concluded that diversity jurisdiction was indeed lacking for the reason argued by National Enterprises and remanded the case to district court with directions to remand it to the state court from which it had been removed.

On December 15, 2003, National Enterprises moved in the Garland County Circuit Court to dismiss the class-action complaint or, alternatively, for summary judgment. On January 7, 2004, the Owners responded to that motion, filed a counter-motion for summary judgment, and moved for class certification. On April 19, 2004, the circuit court held a hearing on these motions. National Enterprises filed an objection to the form of the proposed judgment on April 26, 2004. On May 14, 2004, the circuit court entered an order certifying the class.[2] At the same time on that same date, the circuit court entered a judgment that denied National Enterprises's Motion for Summary Judgment but granted the Owners' Counter-Motion, and found National Enterprises liable. Damages were awarded to the Owners in that judgment in the amount of $1,995,999.67. The court ordered that this amount be paid into the registry of the court or, alternatively, that a *supersedeas* bond be posted.

---

[2] The propriety of class certification is not an issue in this appeal, although National Enterprises does raise the precise number of class members as a material issue of fact that is unresolved, which it claims would make summary judgment inappropriate.

The record on appeal was lodged with the Supreme Court Clerk on June 10, 2004. On September 2, 2004, the Owners moved to supplement the record, and on September 23, 2004, this court remanded the case to the circuit court to settle the record. A supplemental record was lodged on October 21, 2004, over the objection of National Enterprises. On October 22, 2004, National Enterprises filed a Motion to Limit the Record or, Alternatively, for Attorneys' Fees and Costs Incurred in Preparation of the Original Opening Brief, Abstract, and Addendum. This court decided to submit that motion with this case.

## I. *Waiver of Notice*

We turn then to the issues raised in this appeal. We initially consider the entry of summary judgment in favor of the Owners before notice of class certification was given. The question that concerns us is whether it was error for the circuit court to consider the merits of the case in deciding liability issues before the prospective class members were notified pursuant to Arkansas Rule of Civil Procedure 23. We conclude that it was not error.

In *Speights v. Stewart Title Guar. Co., Inc.*, 358 Ark. 59, 64, 186 S.W.3d 715, 718-19 (2004), we said:

> In *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974), the Supreme Court forbade any inquiry into the merits of the class action before a class had been certified and the class members had been notified.
>
> . . .
>
> We agree with the Supreme Court's rationale set out in *Eisen* and conclude that the trial court in the case here erred when it undertook to adjudicate the merits of the class action before determining its appropriateness as a class action and before determining the composition of the class.

Thus, we concluded that a merits determination on a Rule 12(b)(6) motion should not transpire before the prospective class members were notified and the class composition determined.[3]

---

[3] We subsequently handed down a supplemental opinion in the *Speights* case. *See Speights v. Stewart Title Guar. Co., Inc.*, 358 Ark. 64-A, 186 S.W.3d 719 (2004). There, we clarified that Rule 12(b)(6) motions *are proper* prior to class certification. We observed that

In the instant case, unlike *Speights*, we are confronted with the issue of a merits decision before notice is given to the class. The notice provisions in our Rule 23 dealing with class actions require that the "best notice practicable" be given to members of the class. Ark. R. Civ. P. 23(c) (2005). Rule 23(c) then prescribes what shall comprise that notice:

> The notice shall: (1) describe the action and the members' rights in it; (2) advise each member that the court will exclude the member from the class if the member so requests by a specified date; (3) advise each member that the judgment, whether favorable or not, will include all members who do not request exclusion; and (4) state that any member who does not request exclusion may, if the member desires, participate in the litigation, either in person or through counsel.

Notice is designed to provide class members with the ability to opt out of the class before liability is resolved and damages determined and protects defendants from a multiplicity of suits from individual class members. Here, however, National Enterprises moved for summary judgment on liability issues before notice was given to the class. Specifically, on December 15, 2003, National Enterprises moved, pre-notice, to dismiss the class action or, alternatively, for summary judgment on the liability issues of alleged breach of contract and misrepresentation by the original developer. The Owners filed their counter-motion for summary judgment on January 7, 2004. This chronology raises the question of whether National Enterprises made a strategic decision and, in doing so, waived its right to contest the failure to give notice, when it moved for summary judgment. *See, e.g., Schwarzschild v. Tse*, 69 F.3d 293 (9th Cir. 1995) (by obtaining summary judgment before the class has been certified and notice sent, defendants waived any right to compel plaintiff to notify the class of the pending action). The Owners do not raise the issue of failure to give notice, but, of course, it was the Owners, who were granted summary judgment.

---

such non-merits determinations are only binding on the named parties and, therefore, are less likely to prejudice unfairly either the unnamed members of the potential class or the defendants to the action. Because such motions promote the administration of justice and will not unfairly prejudice the parties to the action, we held them appropriate prior to class certification.

■    We conclude that National Enterprises waived the notice issue. Though Arkansas has no specific authority on this point, federal case law is significant. *See, e.g. Swartzchild, supra; Postow v. OBA Fed. Sav. and Loan Ass'n*, 627 F.2d 1370, 1380-85 (D.C. Cir. 1980) (held no error where final designation of class and sending of notice to members occurred after trial court denied defendant's summary-judgment motion and later granted plaintiff's summary-judgment motion). Moreover, we do not view the fact that National Enterprises was unsuccessful in its summary-judgment motion as decisive, as National Enterprises contends. It would make little sense for a defendant to move for summary judgment on liability issues before notice, lose on that motion, and then argue that the court's judgment violated notice requirements. We, therefore, hold that National Enterprises's motion for summary judgment on liability issues prior to class notice waives the mandate that notice be given under Rule 23(c).

## II.  Liability Issues

We turn then to the liability issues, which involve statutory interpretation. National Enterprises contends that summary judgment was error because the circuit court erroneously interpreted the Arkansas Time-Share Act to hold National Enterprises, a condominium owner, liable to other condominium owners for misrepresentation or constructive fraud. That liability, according to National Enterprises, should only be found against the original developer. This argument is not persuasive.

The statute at issue reads:

> In the financing of a time-share program, the developer shall retain financial records of the schedule of payments required to be made and the payments made to any person or entity which is the lienholder of any underlying blanket mortgage, deed of trust, contract of sale or other lien or encumbrance. Any transfer of the developer's interest in the time-share program to any third person shall be subject to the obligations of the developer.

Ark. Code Ann. § 18-14-601 (Repl. 2003).

National Enterprises claims that the second sentence of this two-sentence statute only imposes upon the transferee of the original developer's interest in the time-share program the obligation of record keeping that is described in the first sentence of the

statute. The *amicus curiae* brief filed by the American Resort Development Association supports this construction urged by National Enterprises.

█ There is no question but that National Enterprises was a successor-in-interest to HHH, the general partner of the Lakeshore Partnership, after buying the note and mortgage from HHH on the Lakeshore property. Indeed, the Joint Statement makes it clear that this is undisputed by the parties. But, more importantly, we view § 18-14-601 to be very clear on the point of National Enterprises's obligations. The second sentence of the statute reads that *any* transfer of the developer's interest to *any* third person shall be subject to the obligations of the developer. Giving the words of this statute their plain meaning, as we are required to do, the statute appears unambiguous and it conveys a clear and definite meaning. *See Slusser v. Farm Serv., Inc.*, 359 Ark. 392, 198 S.W.3d 106 (2004). That meaning is that National Enterprises succeeds to the obligations of the initial developer, and we so hold.

Our statutory interpretation in this regard is bolstered by the analysis undertaken by the Eighth Circuit Court of Appeals in *Kessler III.* In that opinion, the Eighth Circuit noted: "the overriding purpose of the Time-Share Act is to protect consumers." *Kessler III*, 238 F.3d at 1013. We agree that § 18-14-601 adheres to that creed by assuring that the original developer's obligations to the Owners are not abandoned.

National Enterprises also argues that the grant of summary judgment was in error because the Owners' constructive fraud claim is barred by the statute of limitations. The circuit court determined that the Arkansas Time-Share Act's statute of limitation governs this action, citing *Shelton v. Fiser*, 340 Ark. 89, 8 S.W.3d 557 (2000), for the principle that a general statute must yield to a specific statute. The Time-Share Act's limitations statute provides:

> A judicial proceeding in which the accuracy of the public offering statement or validity of any contract of purchase is in issue and a rescission of the contract or damages is sought must be commenced within four (4) years after the date of the contract of purchase, notwithstanding that the purchaser's terms of payments may extend beyond the period of limitation. However, with respect to the enforcement of provisions in the contract of purchase which require the continued furnishing of services and the reciprocal pay-

ments to be made by the purchaser, the period of bringing a judicial proceeding will continue for a period of four (4) years for each breach, but the parties may agree to reduce the period of limitation to not less than two (2) years.

Ark. Code Ann. § 18-14-403 (Repl. 2003).

The circuit court's summary judgment applies the second sentence of the Arkansas Time Share Act's four-year statute of limitations to the instant case. That second sentence concerns actions to enforce purchase contract provisions requiring the continued furnishing of services and reciprocal payments by the purchaser. The circuit court concluded that the Owners' complaint was timely, because it was filed on November 27, 1996, within four years of the date when LHR terminated its agreement to provide amenities, parking, and utilities to Owners on December 10, 1993.

National Enterprises urges that the circuit court found liability based on the developer's acts of misrepresentation and constructive fraud when it induced time-share purchases, in part, by promises of permanent access to the hotel's amenities, parking, and utilities. Therefore, it argues that the appropriate statute of limitations is the general three-year limitation pursuant to Ark. Code Ann. § 16-56-105 (1987), which governs fraud actions. As characterized by National Enterprises in its brief, the wrong done by the developer was "the then-existing but otherwise unknown alleged flaw in the irrevocable license agreement," for which the limitation period, absent concealment, began in 1985 or 1986 at the time Owners purchased their time-share contracts.

We affirm the circuit court and hold that the specific statute under the Time-Share Act (§ 18-14-403) controls as opposed to the general limitations statute (§ 16-56-105). Had we adopted National Enterprises's argument, this would have terminated the Owners' right to seek relief before any injury was known to them. This is certainly contrary to the General Assembly's intention to protect consumers under the Act.

### III. Notice and Damages

Though we have decided that liability issues could be resolved before notice to the class members due to National Enterprises's waiver, we conclude that a Rule 23(c) notice is now appropriate to class members under the direction of the circuit court. Accordingly, we remand this case for that purpose.

Following notice, a determination of individual defenses and damages of the resulting class members will be necessary by the circuit court. As we have said in several cases, the circuit court will now have to determine whether individual claims of class members will be splintered for a decision on particularized defenses raised by National Enterprises such as abandonment of claims and the amount of damages owed to individual Owners. *See, e.g., Seeco, Inc. v. Hales,* 330 Ark. 402, 954 S.W.2d 234 (1997); *Lemarco, Inc. v. Wood,* 305 Ark. 1, 804 S.W.2d 724 (1991).

## *IV. Federal Evidence*

We do take this opportunity to resolve one issue that is certain to recur on remand for a determination of damages, which is whether the circuit court may examine evidence taken in federal district court from 1997 to 2003 for purposes of deciding this case. We conclude that it can under the facts of this case.

National Enterprises contends that all that occurred in federal district court for that seven-year period became void upon remand to Garland County Circuit Court and that it was as if the federal court proceedings never occurred. National Enterprises's argument is founded on the principle that "after remand from federal court, a case stands as if it had never been removed from state court, and what happened in federal court has no bearing on the proceeding in state court." *NCS Healthcare of Arkansas, Inc. v. W. P. Malone, Inc.,* 350 Ark. 520, 527, 88 S.W.3d 852, 856 (2002), *accord Steve Standridge Ins., Inc. v. Langston,* 321 Ark. 331, 335, 900 S.W.2d 955, 958 (1995) ("[R]egardless of what took place in federal court, the state proceedings essentially 'picked up where they left off,' which was just after Standridge filed its motion to dismiss."); *Trinity Universal Ins. Co. v. Robinson,* 227 Ark. 482, 485-86, 299 S.W.2d 833, 836 (1957) ("The general rule is that when a case is removed to the Federal Court and remanded, it stands in the State Court in the same position in which it would have been had it never been removed."); *Meyers Store Co. v. Armstrong,* 187 Ark. 636, 61 S.W.2d 440, 441 (1933) ("When a case has been remanded from federal court, it is the duty of the state court to proceed as though no removal had ever been attempted.").

However, consistent with this authority, the record shows that the remanded case resumed in Garland County Circuit Court in 2003 as if the 1996 complaint had just been filed in that court. National Enterprises, though, objects to the circuit court's reliance

on the federal opinions (*Kessler I, Kessler II, Kessler III, Kessler IV*) rendered in this case, and on the evidence that was developed and filed in those proceedings. Particularly, they object to the evidence that became the supplemental record in this appeal.

On remand from this court to the circuit court "to settle the record," the Garland County Circuit Court entered its order on October 7, 2004, and itemized the supplemental record materials, all of which derive from the federal litigation, as follows: (a) Memorandum Opinion and Order (entered September 29, 1997, by Hon. Jimm Larry Hendren),[4] (b) Exhibits to Joint Statement of Undisputed Facts, (c) Plaintiffs' First Amended and Substituted Motion for Entry of Judgment and Award of Notice of Judgment in Class Action,[5] (d) Plaintiffs' Reply to Defendants' Response to Plaintiffs' First Amended and Substituted Motion for Entry of Judgment and Approval of Notice of Judgment in Class Action, (e) Answer of Defendants, and (f) Judgment (entered September 23, 2002, by Hon. Jimm Larry Hendren). On October 21, 2004, the Owners supplemented the record on appeal by lodging these materials, as contained in four large 3-ring binders, a single volume, and a single envelope, with this court.

The bulk of the supplemental record materials is contained in the four binders and consists of backup documentation to two documents — the Joint Statement of Undisputed Facts, and a document entitled "Time-Share Owners Master Damages Spreadsheet as of 9/27/2001." As noted above, the Joint Statement was also an appended exhibit to the Owners' Counter-Motion for Summary Judgment in the circuit court, as was a document entitled "Time-Share Owners Master Damages Spreadsheet as of 12/22/2003," which appears to be an updated version of the 2001 spreadsheet.

On October 22, 2004, National Enterprises filed its Motion to Limit the Record, or, Alternatively, for Attorneys' Fees and Costs Incurred in the Preparation of the Original Opening Brief, Abstract, and Addendum, on the ground that the supplemental record materials were not part of the record below on the date of the April 19, 2004 hearing, or the entry of the May 14, 2004 order

---

[4] The document is actually file stamped September 23, 1997 by the federal district court.

[5] The document is actually entitled "Plaintiffs' First Amended and Substituted Motion for Entry of Judgment and Approval of Notice of Judgment in Class Action."

and judgment, which are now on appeal. The motion was docketed as "PASSED UNTIL CASE SUBMITTED" and is now considered with the appeal. We note in this regard that it is undisputed that the supplemental record materials were in the circuit court clerk's office on April 19, 2004, at the time the circuit court conducted its motion hearing.

We disagree with National Enterprises that the evidence in these supplemental record materials cannot be considered by the circuit court in deciding the individual damage claims. The authority cited by National Enterprises precludes the use of federal *pleadings* in the remanded state-court proceeding but does not address the use of *evidence* that was developed in the federal action in the state-court proceeding. With respect to that evidence, we conclude that these supplemental record materials can be properly considered by the circuit court when filed in that court.

It is somewhat unclear to this court whether these supplemental materials were actually identified as exhibits to the Owners' Response to Motion to Dismiss or for Summary Judgment and Counter Motion for Summary Judgment so as to be considered by the circuit court in the damage calculations in its May 14, 2004 judgment. Regardless, because we are reversing and remanding the damages portion of this case, we have no doubt that this question will be moot after a proper filing of these materials.

Because we reverse the damages awarded to the class members due to a lack of notice to the class, we further reverse the circuit court's order directing National Enterprises to pay $1,995,999.67 into the registry of the court.

The motion to limit the record or, alternatively, for attorney's fees and costs is denied.

Affirmed in part. Reversed and remanded in part.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING
SEPTEMBER 15, 2005

*Farrar, Reis, Rowe, Nicolosi, Williams & Strause*, by: *Bryan J. Reis*; and *Williams & Anderson, PLC*, by: *Peter G. Kumpe* and *Stephen B. Niswanger*, for appellants.

*Bequette & Billingsley, P.A.*, by: *Jay Bequette*; and *Wood, Smith Schnipper & Clay*, by: *Don M. Schnipper*, for appellees.

ROBERT L. BROWN, Justice. Appellants National Enterprises, Inc. and Arkansas No. 1 LLC (hereinafter National Enterprises) petition for rehearing from this court's decision handed down on July 1, 2005. Three points are raised in support of the petition: (1) the court erred in leaving intact the circuit court's order to deposit more than $1.9 million into the registry of the circuit court; (2) this court erred in creating lender liability under Ark. Code Ann. § 18-14-601 (Repl. 2003); and (3) this court erred in concluding that National Enterprises waived the issue of notice to class members prior to a determination of liability. We deny the petition with respect to the lender-liability point and the waiver point, but grant the petition with respect to the mandated deposit of more than $1.9 million into the registry of the circuit court.

In our opinion which is the subject of the petition, we said regarding the mandated payment:

> We decline to reverse the circuit court's order directing payment of $1,995,999.67 into the registry of the court, or, in the alternative, the posting of a *supersedeas* bond, subject to any adjustment of that total amount by the circuit court based on the total damages awarded to class members.

*Nat'l Enters., Inc. v. Kessler*, No. 04-646, slip op. at 12 (Ark. July 1, 2005) (substituted by *Nat'l Enters., Inc. v. Kessler*, 363 Ark. 167, 213 S.W.3d 597 (2005)). Our reasoning for this holding was that liability

had been decided against National Enterprises. Thus, all that remained were damage determinations for all class members after notice was given pursuant to Arkansas Rule of Civil Procedure 23(c) (2005).

Nevertheless, we now agree with National Enterprises that because a judgment for a specific sum of damages has yet to be entered due to this court's reversal and remand to the circuit court for a determination of damages, payment of any sum into the registry of the court is premature. The appellees' response to National Enterprises's petition on this point overlooks the potential, at least, for a reduction of the damage award based on the defenses asserted. The argument made by the appellees that the ultimate damage award may be "significantly higher" does not answer National Enterprises's assertion that the damages, after defenses are raised, may be lower.

Accordingly, we strike from our original opinion the paragraph quoted above and replace it with the following language which appears in the substituted opinion issued this date:

> Because we reverse the damages awarded to the class members due to a lack of notice to the class, we further reverse the circuit court's order directing National Enterprises to pay $1,995,999.67 into the registry of the court.

Rehearing is denied in part and granted in part. Substituted opinion issued this date.