FIRST UNITED, INC. *v.*
CHICAGO TITLE INSURANCE COMPANY,
Hot Springs Title Company

05-796                                                    237 S.W.3d 15

Supreme Court of Arkansas
Opinion delivered June 1, 2006

[Rehearing denied September 7, 2006.]

*Coplin and Heuer*, by: *Sam T. Heuer*, for appellant.

*Rose Law Firm*, by: *Garland J. Garrett*, for appellee Chicago Title Insurance Company.

*James M. Duckett* and *Hal Joseph Kemp, P.A.*, for appellee Hot Springs Title Company.

BETTY C. DICKEY, Justice. First United, Inc., appeals the order of the Garland County Circuit Court granting the

motion for summary judgment by appellees, Chicago Title Insurance Company and Hot Springs Title Company, on the grounds that a title insurance policy written and issued by the appellees did not cover First United's potential liability as a successor–in–interest under the Arkansas Time Share Development Act. Jurisdiction in this case is pursuant to Ark. Sup. Ct. R. 1–2(b)(1). We find no error and affirm.

The appellant, First United, Inc., owns a mortgage on a parcel of land in Garland County that is insured by a title insurance policy written by appellee Chicago Title Insurance Company. The policy was issued by appellee Hot Springs Title Company. A time share development sits on the land, which is surrounded by the Lake Hamilton Resort and is adjacent to a hotel. The time share development has been the subject of extensive litigation over a period of years, which is chronicled in our decisions of *National Enterprises, Inc. v. Kessler*, 363 Ark. 167, 213 S.W.3d 597 (2005), and *National Enterprises, Inc. v. Lake Hamilton Resort, Inc.*, 355 Ark. 578, 142 S.W.3d 608 (2004). There was a license agreement between the original developer of the time share development and the ownership of the hotel, whereby purchasers of time share interests were entitled to use the amenities of the hotel. The time share developer sold the time share interests to purchasers with the promise that they would be able to continue to use the amenities of the hotel. Eventually, both the time share development and the hotel were sold at foreclosure. Litigation ensued, and on August 30, 1994, the Garland County Circuit Court ruled that the foreclosures had terminated the license agreement. No longer able to use the amenities, the time share purchasers filed a class–action suit against the time share developer's successors–in–interest for fraud. After a long and tortured litigation, the Garland County Circuit Court ruled that the successors–in–interest, pursuant to the Arkansas Time–Share Act, Ark. Code Ann. § 18-14-101 – 18-14-703 (Repl. 2003), owed damages of approximately $1.6 million, due to the fraud of the original developer. That judgment was affirmed by this court in *National Enterprises, Inc. v. Kessler, supra.* First United is a potential successor–in–interest to the original developer, although it has not taken title to the property. If First United should take title, it would be exposed to liability for the judgment, pursuant to our interpretation of the Time–Share Act.

On November 18, 2004, First United filed a complaint in the Garland County Circuit Court, alleging that the appellees had breached the title insurance policy. The appellees moved for summary judgment, and on June 10, 2005, the court granted the

motion for summary judgment, and dismissed the appellant's claim with prejudice. First United appeals that ruling.

The first point on appeal is: *The trial court erred in granting summary judgment to Chicago Title Company.*

Summary judgment should be granted only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Riverdale Dev. Co. v. Ruffin Bldg. Sys., Inc.*, 356 Ark. 90, 146 S.W.3d 852 (2004). When reviewing a grant of summary judgment, this court views the evidence in the light most favorable to the non-moving party, resolving all doubts and inferences against the moving party. *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998). Any ambiguities in an insurance policy are construed liberally in favor of the insured. *Lewis v. Mid-Century Ins. Co.*, 362 Ark. 591, 210 S.W.3d 113 (2005).

The issue to be resolved in this case is whether the policy contractually obligates Chicago Title to reimburse First United in the event that First United takes title to the land and therefore becomes liable for the judgment. Thus, the decisive question is whether the policy covers the judgment. The policy, in pertinent part, provides:

> **Subject To The Exclusions From Coverage, The Exceptions From Coverage Contained In Schedule B And The Conditions And Stipulations, Chicago Title Insurance Company**, a Missouri corporation, herein called the Company, insures, as of the Date of Policy shown in Schedule A, against loss or damage, not exceeding the amount of insurance stated in schedule A, sustained or incurred by reason of:
>
> 2. Any defect in or lien or encumbrance on the title.
>
> 3. Unmarketability of title. . . .

The appellant asserts that the liability for the judgment that it would assume, upon taking title to the land, constitutes a defect in title, which is covered by the policy. The appellees contend that statutory liability or loss arising from ownership is not a "defect" covered by the policy. Defective title is defined as "a title that cannot legally convey the property to which it applies, usually because of a conflicting claim." *Black's Law Dictionary* 1492 (7th ed. 1999).

In support of their argument, the appellees cite *Chicago Title Insurance Co. v. Kumar*, 24 Mass. App. Ct. 53, 506 N.E.2d 154 (1987). There, a purchaser bought a tract of land which harbored an ongoing, unknown, and illegal environmental hazard, and the court held that the purchaser's statutory liability for the hazard did not amount to a "defect in, or lien or encumbrance on title." *Kumar*, 24 Mass. App. Ct. at 56, 506 N.E.2d at 156. The appellees also direct us to *Hocking v. Title Insurance & Trust Co.*, 37 Cal. 2d 644, 234 P.2d 625 (1951), where the court held that the fact that the land purchased was in a state of non-compliance with existing statutes did not constitute a defect in title, even though that fact had an adverse effect on the economic value of the land. In *Hocking*, the court noted, "One can hold perfect title to land that is valueless; one can have marketable title to land while the land itself is unmarketable." *Hocking*, 37 Cal. 2d at 651, 234 P.2d at 629.

▮  In the present case, the appellant does not dispute that, should it choose to take title to the land, it would have the right to possess, control, and dispose of the property. There are no conflicting claims to the property. Instead, the appellant is simply asserting that because the pending judgment makes the property unattractive to potential purchasers, a defect in title exists. We do not agree, and for the foregoing reasons, we hold that the loss in real estate value as a result of a purchaser's potential liability as a successor-in-interest under the Time-Share Act does not constitute a "defect" in title for purposes of title insurance.

The appellant also contends that the title is unmarketable, while the appellee argues that the appellant is confusing the marketability of the title with the marketability of the land itself. In support of its argument, the appellees direct us to a treatise, *Powell on Real Property*, § 92.05, which states that, "[M]odern cases emphasize the differences between marketability of title and marketability of land." In further support of the distinction, the appellant cites *Kumar, supra*, where the court noted that marketability of title related to "defects affecting legally recognized rights and incidents of ownership" and was distinct from the lack of economic marketability of the land itself. The court in *Hocking, supra*, also emphasized the distinction, stating,

> Although it is unfortunate that plaintiff has been unable to use her lots for the building purposes she contemplated, it is our view that the facts which she pleads do not affect marketability of her title to

the land, but merely impair the market value of the property. She appears to possess fee simple title to the property for whatever it may be worth. . . .

*Hocking*, 37 Cal. 2d at 652, 234 P.2d at 629-30.

The appellees also cite *Lick Mill Creek Apartments v. Chicago Title Insurance Co.*, 231 Cal. App. 3d 1654, 283 Cal. Rptr. 231 (1991), which relied on *Kumar* and *Hocking* to illustrate the distinction between the marketability of land, as opposed to marketability of title.

■■ Similarly, the appellant here appears to possess fee simple title to the land, whatever it might be worth, and we agree that it is possible to hold perfect title to land that is valueless. The appellant has failed to appreciate the distinction between land that is unmarketable and title that is unmarketable, and its arguments emphasize factors that relate to the lack of economic value of the land itself, rather than to a title that is unmarketable. The appellant is free to possess and control the land, or to sell it to whatever purchaser desires to buy it. Accordingly, we hold that the judgment in this case does not make title to the land unmarketable. Because we conclude that the judgment is not covered by the policy, which insures against defects in title and unmarketability of title, as opposed to the unmarketability of the property itself, we need not address the additional questions raised by the appellant of whether specific exclusions within the policy apply to the judgment. The trial court's ruling on this point is affirmed.

The appellant's second point on appeal is: *The trial court erred in granting summary judgment to Hot Springs Title Company*

■ First United argues that Hot Springs Title, which actually issued the policy, was not acting as an agent of Chicago Title, which created the policy. There is undisputed evidence that Hot Springs Title informed First United that it was acting as an agent for its principal, Chicago Title, and no evidence that Hot Springs Title did anything that could be construed as being outside the scope of its agency in issuing the title to First United. An agent that acts within the scope of its authority for a disclosed principal is not liable on an insurance contract. *McCullough v. Johnson*, 307 Ark. 9, 816 S.W.2d 886 (1991). Once a moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the exist-

ence of a material issue of fact. *Wallace v. Broyles,* 331 Ark. 58, 961 S.W.2d 712 (1998). First United has not met proof with proof in regard to the agency question, and has not demonstrated the existence of a material issue of fact. Thus, we conclude that Hot Springs Title was acting as an agent of Chicago Title and, accordingly, we affirm this point on appeal.

Affirmed.